IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NHC, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19 C 6332 |
| ) | |
| CENTAUR CONSTRUCTION CO., ) | |
| SPIRO TSAPARAS, and ) | |
| PETER ALEXOPOULOS, ) | |
| ) | |
| Defendants. ) | |

### ORDER ON DEFENDANTS' MOTION TO DISMISS

Defendants Centaur Construction Co., Spiro Tsaparas, and Peter Alexopoulos have moved under Federal Rule 12(b)(6) to dismiss plaintiff NHC, LLC's third amended complaint for failure to state a claim. In April 2018, NHC entered into a contract with Centaur under which Centaur agreed to provide design and construction services in connection with the design and construction of the NOBU Hotel in Chicago. NHC has sued all of the defendants for fraud and has sued Centaur and Tsaparas for breach of contract (Tsaparas on a piercing-the-corporate-veil theory).

The contract provided for a guaranteed maximum price of a little over $48 million for Centaur's work. It established a process for Centaur to submit applications for progress payments on work it had performed. This required Centaur to certify that the work for which it was seeking payment had actually been done and that contractors and subcontractors had been paid and there were no liens on the part of those who had performed work.

From January 2018 through June 2019, Centaur applied for and was paid twenty-four progress payments totaling a little under $48 million. NHC alleges that it eventually discovered that Centaur's representations that it had performed all of the work for which it requested payment were false; that Centaur had hired a number of undisclosed subcontractors and had agreed to "change orders" amounting to millions of dollars; that many subcontractors had not been paid; and that instead of using the funds obtained from NHC to perform work on the project or pay the subcontractors in full, defendants used millions of dollars for personal use or to fund other projects or expenses.

Defendants moved to dismiss an earlier version of NHC's complaint. They contended that the complaint did not adequately spell out the circumstances of the alleged fraud and that the breach of contract claim failed to state a claim. The Court entered an order in which it overruled the motion with regard to the breach of contract claim and as to the fraud claim against Centaur but took the motion under advisement with respect to the fraud claim against Tsaparas and Alexopoulos. NHC then filed a third amended complaint including additional allegations against Tsaparas and Alexopoulos. Defendants have again moved to dismiss the fraud claim.

A fraud claim under Illinois law (which the parties agree applies) requires the plaintiff to allege a false statement of material fact; the defendant's knowledge of the statement's falsity; the defendant's intent to induce the plaintiff to act based on the statement; the plaintiff's reliance on the statement's truth; and damages resulting from the reliance. *See, e.g., Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (1996). Federal pleading rules, specifically Federal Rule of Civil Procedure

9(b), require a party alleging fraud to "state with particularity the circumstances constituting fraud," though intent and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). Complaints alleging fraud must provide "the who, what, when, where, and how" of the fraud. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

NHC's fraud claim meets these requirements. First, as to Centaur, the Court already ruled the previous version of the fraud claim sufficient. The third amended complaint is likewise sufficient. It specifically identifies Centaur's alleged false statements—the twenty-four progress payment requests—and it says when they were made and describes how they were false. It is true that NHC does not allege who specifically within Centaur prepared and sent the payment requests, but to state a claim against Centaur that is not required. Centaur cites no case that says that a plaintiff suing a corporate entity for fraud must identify the specific persons associated with the entity who transmitted the representations claimed to be false, and this is not something one would expect a corporate outsider to know. *See Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998) (Rule 9(b)'s particularity requirement is relaxed "where the plaintiff lacks access to all facts necessary to detail his claim").

Next, with regard to Tsaparas, NHC describes in detail his participation in at least two knowingly false representations that it alleges were made to obtain payment or induce other action or non-action on the part of NHC. First, NHC alleges that on May 2, 2019, Tsaparas met in Mexico with Rodrigo Chapur, a representative of NHC, and told him that Centaur was three-quarters of a million dollars over budget and that the schedule for completion of the project would be affected by a month or two at most.

3

NHC alleges that when he made these statements, Tsaparas knew the project would be far more over budget than that and that its completion would be delayed far longer. 3d Am. Compl. ¶ 61. Second, NHC alleges that on May 19, 2019, Tsaparas sent Chapur an invoice by e-mail stating that Centaur had earned a total $46,881,761.24 for work on the project and that it was owed $4,896,522.13. NHC alleges that this statement was false in that Centaur actually had not completed work entitling it to such payment and that Tsaparas knew this. *Id.* Third, NHC alleges that on July 24, 2019, Tsaparas sent Chapur an e-mail stating that the total amount required above the contracted sum to complete the project was $6,156,000; the project would not suffer any liens; and Centaur would pay the rest of the "trades" (contractors) on July 24 so that the construction site would get the manpower it needed to catch up. NHC alleges that these were knowingly false statements made to induce NHC to refrain from terminating the contract and that Centaur relied on them. *Id.* These allegations are sufficient to comply with NHC's pleading obligations under Rule 9(b) with regard to its claim against Tsaparas.

  Last, with regard to Alexopoulos, NHC alleges that on May 19, 2019, he signed an application for payment and an affidavit falsely representing that Centaur had earned and completed work totaling $46,881,761.24; there was a balance then due of $1,375,238.76; and there was nothing due to any person for labor or materials other than as stated in the application. This, NHC alleges, was false in that Centaur had engaged additional undisclosed subcontractors who were not listed in the affidavit and who had not been paid. NHC alleges that at Alexopoulos's instruction and with his knowledge, Tsaparas e-mailed the application and affidavit to Chapur on May 19, 2019

4

to obtain payment. Second, NHC alleges that Alexopoulos made similar false statements in an application and affidavit dated June 14, 2019, which likewise was sent to NHC to obtain payment. These allegations are sufficient to comply with NHC's pleading obligations regarding its claim against Alexopoulos.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss [33] and denies as moot plaintiff's motion to strike defendants' motion [36]. Defendants are directed to answer all claims in the third amended complaint that they have not already answered by no later than August 10, 2020.

Date: July 19, 2020

_____
MATTHEW F. KENNELLY
United States District Judge