```
 1                 IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
     NHC LLC, a Florida limited      )
 4   liability company,              )
                                     )
 5                   Plaintiff,      )
                                     )  No. 19 C 6332
 6           vs.                     )  Chicago, Illinois
                                     )  November 22, 2023
 7   CENTAUR CONSTRUCTION COMPANY     )  10:30 a.m.
     INC., an Illinois corporation,  )
 8   SPIRO TSAPARAS and              )
     PETER ALEXOPOULOS,              )
 9                                    )
                     Defendants.      )
10

11            TRANSCRIPT OF PROCEEDINGS - MOTION

12        BEFORE THE HONORABLE MATTHEW F. KENNELLY

13   APPEARANCES:

14   For the Plaintiff:       DAVIS MC GRATH LLC
                              125 South Wacker Drive
15                            Suite 300
                              Chicago, Illinois 60606
16                            BY:  MS. GINI S. MARZIANI

17   For the Defendant:       AMUNDSEN DAVIS, LLC
                              150 North Michigan Avenue
18                            Suite 3300
                              Chicago, Illinois 60601
19                            BY:  MS. KIMBERLY A. HERRING
                                   MR. CONSTANTINE GAVRILOS
20

21

22   Official Court Reporter: JENNIFER COSTALES, CRR, RMR, CRC
                              219 S. Dearborn St., Room 1928
23                            Chicago, Illinois 60604
                              (312) 435-5895
24                            jenny.uscra@yahoo.com

25
```

1      (Proceedings in open court)

2          THE COURTROOM DEPUTY:  Case 19 C 6332, NHC versus

3    Centaur Construction.

4          THE COURT:  Sorry to keep you waiting.  Good morning.

5          MS. MARZIANI:  Good morning, Your Honor.  Gini

6    Marziani on behalf of the plaintiff.

7          MR. GAVRILOS:  Good morning, Your Honor.  Constantine

8    Gavrilos on behalf of defendants.

9          MS. HERRING:  Kim Herring also on behalf of

10   defendants.

11         THE COURT:  Okay.  So have you guys talked at all

12   before coming in here about what we're doing today?

13         MS. MARZIANI:  We've had conversations.

14         THE COURT:  Okay.  So what are we doing today?

15         MS. MARZIANI:  Well, I think that today --

16         THE COURT:  Let's put aside the McFadden thing for

17   the moment.  Let's just talk about everything else.

18         MR. GAVRILOS:  Your Honor, if I may?  We had filed

19   the motion to claim exemptions --

20         THE COURT:  Yep.

21         MR. GAVRILOS:  -- a week ago or two weeks ago on

22   Friday.

23         THE COURT:  That's one of the things we're doing

24   today.

25         MR. GAVRILOS:  Counsel and I have conferred on those

1    exemptions.  It's my understanding, and I'll let counsel jump

2    in and correct if need be, that virtually 95 percent of those

3    exemptions will not be objected to.

4            THE COURT:  Okay.

5            MR. GAVRILOS:  I believe the one at issue pertains to

6    the wage calculation regarding defendant Peter Alexopoulos'

7    wages.  Aside from that, it's my understanding that all of the

8    other exemptions asserted on behalf of Mr. Tsaparas and

9    Mr. Alexopoulos will not be contested by opposing counsel.

10           THE COURT:  Pronounce the first person's name again.

11           MR. GAVRILOS:  Spiro Tsaparas.

12           THE COURT:  I've been mispronouncing it for four

13   years.

14           MR. GAVRILOS:  I mispronounce my own name all the

15   time.  Greek names are tough.

16           THE COURT:  I'm actually usually pretty good at them

17   because I worked for a law firm called Cotsirilos at one point

18   in time.

19           MR. GAVRILOS:  Fair enough.

20           THE COURT:  So I learned some things.  But that one

21   got past me.  All right.  So I won't make that mistake again.

22   Tsaparas.

23           Is what he just said right?

24           MS. MARZIANI:  Your Honor, not quite.  I think we

25   have an agreement as far as the statutory exemptions and that

1    Illinois law will control, and in particular with regard to

2    Mr. Tsaparas --

3              THE COURT:  Tsaparas.

4              MS. MARZIANI:  Tsaparas.

10:30:34    5              THE COURT:  I was putting the accent on the wrong

6    syllable.

7              MS. MARZIANI:  Tsaparas.  I was also --

8    Mr. Tsaparas's wages from M Sourcing LLC.

9              THE COURT:  Is that the company you were referring to

10:30:48    10   or it's something different?  It's something different?

11             MR. GAVRILOS:  Yes.

12             THE COURT:  Okay.  Keep talking.

13             MS. MARZIANI:  So we are in agreement with that.  In

14   the exemption motion, there isn't any reference to the fact of

10:31:00    15   when those wages should have been paid to --

16             THE COURT:  Okay.  So I'm going to go back to my

17   first question then.  You tell me what we're supposed to be

18   doing today.  My goal is you guys walk out of this courtroom,

19   I'm done with you.  I am done with you, a hundred percent

10:31:20    20   done, unless something comes up after today that nobody could

21   anticipate, because I want to be done with this, okay.

22             So what is your view of what we're doing today?

23             MS. MARZIANI:  My view was that we would be able to

24   come to an agreement at least on the way --

10:31:36    25             THE COURT:  This is set for a citation examination

 1   for the two individual defendants.  That's what this is.

 2              MS. MARZIANI:  Your Honor, I understand that.  And I

 3   know that you are not happy --

 4              THE COURT:  That is not even close to capturing it,

 5   not even in the ballpark.

 6              MS. MARZIANI:  Yeah.  I've mentioned this to my

 7   family many times.  And I apologize for my contribution to

 8   making you --

 9              THE COURT:  No, it's not -- we're just, we're all

10   floating around out here with nobody knowing exactly, and in

11   particular me, not knowing exactly what is going to happen.

12              So you served citations to discovery assets on

13   people.  The law contemplates a hearing.  We are having it.

14   It's today.

15              MS. MARZIANI:  Your Honor, I understand your position

16   on that.

17              THE COURT:  It's not my position.  It's what the

18   statute says.

19              MS. MARZIANI:  I know.  But the examinations do not

20   take place in front of the judge unless there is --

21              THE COURT:  You are mistaken.  Let me read to you

22   what the statute says.  This is 735 ILCS 5/21402B.

23              And it's the -- I'm sorry, it's not B, it's maybe C.

24   What it basically says, I had it earlier this morning, it

25   basically says it's in front of the judge, or if the judge

1    orders, in front of somebody else.  That's what it says.

2         MS. MARZIANI:  Respectfully, Your Honor, the times

3    that they are in front of a judge is when there is a problem

4    during the examination.

10:33:06   5         THE COURT:  But how do you know that until you've

6    started it?

7         MS. MARZIANI:  Exactly.  I also believe that --

8         THE COURT:  Okay.  So let me ask you a different

9    question then.  When did you serve these citations?

10:33:18   10   Approximately what date?

11        MS. MARZIANI:  On May and June of -- on the two

12   individual defendants.

13        THE COURT:  The two people we're talking about.

14        MS. MARZIANI:  Yes.

10:33:29   15        THE COURT:  And how long do those things last under

16   the law?

17        MS. MARZIANI:  They last six months from appearance

18   date.

19        THE COURT:  Does that run six months from the

10:33:39   20   appearance date?

21        MS. MARZIANI:  Yes.

22        THE COURT:  So do you have an indefinite amount of

23   time to set the appearance?

24        MS. MARZIANI:  Yes.

10:33:44   25        THE COURT:  So you just forever?  In other words, you

1  can say four years from now -- that's what "indefinite" means,

2  right?

3      MS. MARZIANI:  Your Honor, I don't, I don't want to

4  be disrespectful or argue with you in any way, shape or form.

10:33:57  5  To answer your question, what I thought was going to happen

6  today was I thought we were going to discuss exemptions.

7      THE COURT:  It's Illinois Supreme Court Rule 277(e).

8  That's what I was referring to before, 277(e).  I'm going to

9  quote it.

10:34:13  10      "The examination of the judgment debtor, third party

11  or other witnesses shall be before the Court, or, if the Court

12  so orders, before an officer authorized to administer oaths

13  designated by the Court, unless the judgment creditor elects,

14  by so indicating in the citation or subpoena served or by

10:34:32  15  requesting the Court to so order, to conduct all or a part of

16  the hearing by deposition as provided by the rules of this

17  Court for discovery depositions."

18      So it says Court, unless the Court orders it to be in

19  front of somebody else who is allowed to administer oaths,

10:34:49  20  unless you elect by indicating in the citation or asking me to

21  conduct all or part of the hearing as a deposition.

22      MS. MARZIANI:  Yes.

23      THE COURT:  Did you do the latter?

24      MS. MARZIANI:  We haven't asked you for that, no.

10:35:02  25      THE COURT:  Did you do it in, did you in --

1      MS. MARZIANI:  No, we did not do it in the citation.

2      THE COURT:  Okay.  That one is out.  So now we're now

3  to one and two.  That's what the Illinois Supreme Court rule

4  says.  And Rule 69 adopts state court procedure.

10:35:15    5      So that's why you're here today.

6      MS. MARZIANI:  Your Honor, I agree with you 100

7  percent on that.  I don't -- we would ask you to have the

8  citation examinations be conducted outside of your presence in

9  front of a court reporter.

10:35:31   10      THE COURT:  When?

11      MS. MARZIANI:  We wanted to take Ms. McFadden's

12  citation examination first.  I requested that examination

13  October 9th.  I gave four dates in which those --

14      THE COURT:  You are going to answer my question at

10:35:48   15  some point.

16      MS. MARZIANI:  What is your question then?  I'm

17  sorry.

18      THE COURT:  My question was when?

19      MS. MARZIANI:  We wanted -- it would be after

10:35:56   20  Ms. McFadden's deposition citation.

21      THE COURT:  So the short answer is you don't know,

22  because you don't have Ms. McFadden's examination yet.

23      MS. MARZIANI:  I wouldn't characterize it as that.

24  It would have been after her examination.  And we had asked

10:36:15   25  for her examination in October.

1    THE COURT:  And why is that, that you want to do them

2   after, why do you want to do the judgment debtors after you do

3   Ms. McFadden?

4    MS. MARZIANI:  Because Ms. McFadden is a domestic

10:36:30  5   partner of one of the judgment debtors, and she has shared

6   financial, we believe, she's shared finances with the judgment

7   debtor, and we wanted to get that information first before

8   taking the citation examination of the judgment debtor, and we

9   will --

10:36:50  10   THE COURT:  She's a domestic partner, I take it, of

11   one of them?

12    MS. MARZIANI:  I'm sorry?

13    THE COURT:  She's, I take it, a domestic part of one

14   of the two judgment debtors?

10:37:00  15    MS. MARZIANI:  Yes, yes, yes.

16    THE COURT:  Okay.  So that explains, you just

17   explained why you want to take Ms. McFadden's deposition

18   before you take the examination -- I said "deposition," I

19   meant "examination" -- before you take the examination of that

10:37:09  20   particular judgment debtor.

21    MS. MARZIANI:  Yeah.

22    THE COURT:  How does that explain the other one?  Why

23   do you need to take Ms. McFadden's deposition before the

24   judgment debtor of whom she is not a domestic partner?

10:37:19  25    MS. MARZIANI:  Because we believe that there will be

1    additional information from Ms. McFadden that we will be able

2    to use when questioning the judgment debtors, both judgment

3    debtors.  Your Honor, they --

4              THE COURT:  Okay.  You've answered my question.

10:37:35    5              MS. MARZIANI:  They had a 500,000 euro boat at least

6    that they shared.

7              THE COURT:  I thought you said 5,000-year-old boat.

8    You said euro boat, okay.  That's an old boat.

9              MS. MARZIANI:  No.  We're talking about a 500,000

10:37:49    10   euro boat.

11             THE COURT:  Okay.  I understand your point.

12             MS. MARZIANI:  And they shared the boat --

13             THE COURT:  I'm going to shift gears for a second.

14   What happened on Ms. McFadden?  And I'm going to preface this

10:37:58    15   by saying, and this hopefully came through in the order, I

16   said on no planet called Earth is it appropriate to on the

17   date the Court has ordered something to happen by on that day

18   file a motion asking to extend it.  It does not work on this

19   planet.  So what happened?

10:38:17    20             MR. GAVRILOS:  Yes, Your Honor.  Just, first of all,

21   as a threshold matter, I want to point out the date of

22   citations that we mentioned earlier was May 5th and May 19th

23   respectively --

24             THE COURT:  Okay.

10:38:26    25             MR. GAVRILOS:  -- for the defendants and their wife

1    and domestic partner.

2              THE COURT:  Okay.

3              MR. GAVRILOS:  As to the issue with Ms. McFadden, the

4    reason, working backwards from the issues that you identified

10:38:34    5    as the most important, the reason that the motion was filed on

6    the date of the deadline was that --

7              THE COURT:  No.  I'm just asking about Ms. McFadden.

8    Oh, I'm sorry, yes, that is what you are going to talk about.

9    Okay, yeah.

10:38:43   10              MR. GAVRILOS:  Yes.  There were discussions with

11   counsel.  We had numerous discussions on the phone and in

12   writing.  I've brought those correspondences with me today.

13   They were, you know, pursuant to Federal Rule 408.

14              So to the extent that those need to be reviewed in

10:38:57   15   camera, we are happy to do so.  But the understanding, Your

16   Honor, was that once certain documents were provided, and I'm

17   directly quoting from one of the letters, that the citation

18   examination of Ms. McFadden and defendant Spiro Tsaparas would

19   not be necessary, and we supplied those documents, and we

10:39:15   20   believe that that would resolve all of the issues,

21   specifically the need to conduct a citation examination.  We

22   did not hear a response, and we had to file our motion.

23              I would also like to point out, Your Honor, that --

24              THE COURT:  So time out.  I've got to just tell you

10:39:29   25   it's all well and good that you had these discussions.  Here

1  is the main thing you had, a court order, you had a court

2  order.  The citation examination regarding Corri McFadden must

3  take place by videoconference by no later than November 17,

4  2023.

10:39:44   5      So I couldn't give two you know whats about what

6  discussions you had.  You had a court order that said when

7  that thing had to happen by.

8      And so if somebody wanted to change that, you don't

9  get to agree to change it.  It's a court order.  It's like

10:40:00  10  saying you have an injunction, we're going to agree to change

11  it.  No, you've got to go ask the judge to change the

12  injunction.  You can't do that.

13      So one of the possible remedies is I just order

14  Ms. McFadden to come in here like next Monday and we just do

10:40:14  15  it.  So why shouldn't I do that?

16      MR. GAVRILOS:  Your Honor, under Supreme Court Rule

17  277 that you cited earlier, as a third-party non-judgment

18  debtor, she's entitled to have her examination, if in person,

19  proceed in the county where she resides or alternatively via

10:40:30  20  Zoom, which we posed to opposing counsel.

21      THE COURT:  I can do a videoconference here.  I can

22  do a videoconference right here.  She can be wherever she

23  wants.  What is the county where she resides?

24      MR. GAVRILOS:  Pitkin County, Your Honor.

10:40:42  25      THE COURT:  Is that in Illinois?

1    MR. GAVRILOS:  Colorado.

2    THE COURT:  Okay, fine.  Why shouldn't we do that on

3 Monday?  I've just got to get this thing off the dime.  The

4 dime is spinning at this point.  I've got to get it off the

10:40:52    5 dime.  Why can't we do that on Monday?

6    MR. GAVRILOS:  Your Honor, we had asked for the

7 deposition actually to proceed on Monday, a couple of days

8 ago, at the direction of this Court.  We're happy to conduct

9 that citation examination under the rule that you cited

10:41:05    10 earlier.

11    You know, I'm not going to make any representations

12 or arguments as to the necessity for that examination.  Though

13 there has been trial testimony as to the lack of commingling

14 of funds between Ms. McFadden and the defendant judgment

10:41:19    15 debtor, so to the extent that counsel believes that there is a

16 reasonable basis that there is any property in her possession,

17 we believe the transcript of this matter -- but it's her

18 prerogative.

19    THE COURT:  When was Ms. McFadden served with this

10:41:29    20 citation?

21    MR. GAVRILOS:  That would have been May 5th, Your

22 Honor.

23    THE COURT:  Right.  So let's just count that.  That

24 is six months and 17 days ago.  I have not seen a motion to

10:41:38    25 quash it.  You waited too long.  The examination is happening.

1   I don't care whether you think it's necessary or not.  It's

2   been asked for.  It's happening.  We're going to do it on

3   Monday.

4           MS. MARZIANI:  Your Honor, I am -- Your Honor, after

10:41:48   5   this hearing, I am getting in a car and I'm driving out to

6   Connecticut, where hopefully my first grandchild will be

7   born --

8           THE COURT:  Well, congratulations.

9           MS. MARZIANI:  -- over Thanksgiving.  I just -- I

10:42:02   10   continue -- this is why I have to --

11           THE COURT:  Here is the deal.  Here is the deal.  And

12   I know you weren't in this case until after the judgment was

13   entered.  But the deal is this, your client evidently wants to

14   take action to enforce the judgment.  And for that reason, you

10:42:17   15   served, or whether it was you or your predecessor counsel

16   served all of these citations back in May.

17           They're not going to sit around forever.  They're

18   just not.  There wasn't a stay of the judgment because it

19   couldn't be stayed, because what needs to happen to entitle

10:42:35   20   somebody to a stay didn't happen.  And we're not -- this is

21   not going to linger forever.

22           And what's been happening here -- and I'm sorry if

23   you find this oppressive, okay.  I'm sorry if you find this

24   oppressive.  What's been happening here is an exercise, an

10:42:52   25   extended exercise in wheel-spinning.  And the wheels are going

1    to stop spinning, because I've been asked to do something and

2    I am going to do my job, which is to get this done, and that's

3    going to happen.

4           When do you get back from Connecticut?

10:43:06   5           MS. MARZIANI:  So our child -- our grandchild hasn't

6    been born yet.  My daughter-in-law is going to be induced on

7    the 26th of --

8           THE COURT:  Sunday.

9           MS. MARZIANI:  Right, this Sunday.  I don't know,

10:43:19  10    we're driving, I don't know when we're getting back.  But I --

11           THE COURT:  Is it going to be before the 4th of

12    December?

13           MR. GAVRILOS:  Your Honor --

14           THE COURT:  That's a question.  Is it going to be

10:43:32  15    before the 4th of September -- December?

16           MS. MARZIANI:  December, I hope so.  I don't, I don't

17    know if it is.

18           THE COURT:  Is it going to be before the 12th of

19    December?

10:43:41  20           MS. MARZIANI:  I would assume it's before the 12th of

21    December.

22           THE COURT:  So I'm just going to tell you right now

23    that the option of me sending you off to do citation

24    examinations of the two defendants in front of somebody else

10:43:58  25    is not going to happen.  The reason it's not going to happen

1    is that this has been delayed too long.

2          And if I send you off to do that, it's basically a

3    prescription for non-ending delay, and it's not going to

4    happen.  The citation examination is going to happen before

10:44:12    5    the judicial officer, which is the first option in the

6    statute, period.  That's the way it's going to be.

7          If you want to do Ms. McFadden's deposition first,

8    I'm going to get defense counsel's views on that in a second,

9    but if that's the way you want to do it, and if I conclude

10:44:29   10    that that's right, I'm going to tell you the date that

11    Ms. McFadden's deposition is happening.  We're going to do it

12    by video.  It's going it happen then.  And then we're going to

13    do the other guy's the day after or two days after.

14          MS. MARZIANI:  Your Honor --

10:44:40   15          THE COURT:  And that's the way it's going to happen.

16    And honestly, you can say whatever you want, I don't care.

17    That's the way it's going to happen.  This is going to be done

18    because you've dragged it out too long.  You have dragged it

19    out too long.

10:44:53   20          Now, I get that you say that you haven't gotten stuff

21    from the other side.  Where have you been?  I have been here

22    since May.  That is six and a half months ago.  That is all

23    coming to an end.  The delays are stopping.  We're getting to

24    the end of this process.

10:45:06   25          Do you have a problem with doing Ms. McFadden's

citation examination by video on the 12th of December?

MR. GAVRILOS: As a matter of conflict with the date and time, I do not believe so.

I do have some comments as to whether it needs to proceed first --

THE COURT: Okay. Give me your thoughts.

MR. GAVRILOS: -- because defendants' position is that the citation examinations of them need to happen today. I don't understand the basis for not moving anything else forward before we talk to a third-party non-judgment debtor, especially --

THE COURT: Let me throw something out for you. So let's say what happens is we do it the way you say. We do Mr. Tsaparas and Mr. Alexopoulos today. And then we do Ms. McFadden a couple of weeks from now or three weeks from now, whatever it is. And counsel finds out something in those examinations that leads her to believe that she needs to find out more information from the two judgment debtors. Does she get to do that at that point?

MR. GAVRILOS: Well, Your Honor, you've extended the citation already over defendants' objection. So to the extent that the citation is still in effect, yes, she could.

THE COURT: Okay. What were the other points that you wanted to make?

MR. GAVRILOS: Well, the other point, Your Honor, is

1    that, and this is a related issue, if you'll bear with me, I

2    won't take too much of your time on this separate issue, but

3    it has come to our attention that there has already been

4    movement toward the defendants' employers to seek garnishments

10:46:25    5    or wage deductions, right.

6        So clearly we do not have to have the citation

7    examination of Ms. McFadden before we could enter turnover and

8    payment orders, which under 1402 cannot happen before the

9    judgment debtors have an opportunity to assert their

10:46:40    10    exemptions, which is another reason this has to happen today,

11    when their employers are already receiving demands

12    electronically to not pay them or to otherwise withhold their

13    wages.

14        For all of those reasons, there is really no basis to

10:46:53    15    have Ms. McFadden's examination proceed first.  Aside from the

16    fact that we believe the attempts to obtain what is I guess a

17    de facto wage garnishment order is improper at this time, but

18    is illustrative of the fact that the examination of

19    Ms. McFadden does not need to proceed before we move forward

10:47:12    20    with the rest of this.

21        THE COURT:  What is the date that I have extended the

22    two judgment debtors, individual judgment debtors' citation

23    through at this point?

24        MS. MARZIANI:  December 20th, Your Honor.

10:47:21    25        THE COURT:  Okay.  All right.  So now I'm back to

1   you.  So what is on the table right now is his proposal.

2   Let's do what you can on the two gentlemen who are here today.

3   Deal with Ms. McFadden later.  Citations are still open.  If

4   you need more information, if you need to go back to

5   Mr. Tsaparas and Mr. Alexopoulos for more information after

6   that, you can.

7        MS. MARZIANI:  Your Honor, I thought today we were

8   going to -- they were going to assert their exemptions and the

9   citation examinations of those individuals then could be

10  continued.  And that's honestly what I thought was going to

11  happen, that we were going to hear what their exemptions were.

12  I was going to explain our position on the exemptions.  And

13  then they could -- then they wouldn't be complaining that they

14  didn't get a chance to assert their exemptions, because they

15  filed a motion asserting their exemptions.  I'm here ready to

16  respond to that motion.  And then we could proceed in the way

17  that getting Ms. McFadden's citation examination done first.

18       THE COURT:  Okay.  So I need a translation of that.

19  So under your scenario, what exactly would we be doing with

20  Mr. Alexopoulos and Mr. Tsaparas today?

21       MS. MARZIANI:  Today we would go through their

22  exemptions that they've claimed in their motion.  I would

23  explain to you why -- we don't disagree with the statutory

24  exemptions, but I'd explain to you why they can't just be

25  applied to, you know, a certain year Ducati, a certain year

1    Suburban, why, you know, they need to give me more information

2    on it.  I thought that they would give me more information on

3    what it was and we could --

4          THE COURT:  So you're telling me that you thought,

5    and I think this is what you just said, that you thought that

6    what you were going to be doing with Mr. Alexopoulos and

7    Mr. Tsaparas today was just dealing with the exemptions, is

8    that what you are telling me?

9          MS. MARZIANI:  Yes, because I --

10         THE COURT:  Okay.  So interpret the following

11   sentence for me out of my order of November the 6th, docket

12   number 295, sentence number 3, "The in-person examination on

13   the citations served upon defendant Tsaparas and Alexopoulos

14   set November 9, 2023 is vacated and reset to November 22nd,

15   2023 at 10:00 o'clock a.m."

16         That doesn't say "exemptions."  That says "in-person

17   examination on the citations."

18         There is a later order that says they're going to be

19   expected to assert their exemptions today or deal with them

20   today.  But that doesn't --

21         MS. MARZIANI:  Right.

22         THE COURT:  -- wipe out that order.

23         MS. MARZIANI:  Right.  No, I understand that.  And I

24   spent a lot of time checking and trying to figure it out,

25   because the citation examination couldn't possibly, of two

1 judgment debtors, couldn't possibly be concluded in -- I

2 honestly was trying to figure out my day, because my husband

3 is in the car.

4        THE COURT:  "Included" doesn't mean "started."

10:50:27   5        MS. MARZIANI:  All right.  So, Your Honor, I don't

6 know how we could conclude a citation examination of two

7 judgment debtors and --

8        THE COURT:  Do you know how we could start it?

9        MS. MARZIANI:  Yes, I do know how we could start it,

10:50:42  10 but I don't know how we could conclude it.

11        THE COURT:  And the reason you don't think we could

12 conclude is, in part at least, because you don't have this

13 information from Ms. McFadden that you think you need.

14        MS. MARZIANI:  One of the reasons is because I don't

10:50:52  15 have that information.

16        THE COURT:  What would be the other biggest reason?

17        MS. MARZIANI:  The other reason is that I don't have

18 enough time to go through --

19        THE COURT:  Too much to go through?

10:51:00  20        MS. MARZIANI:  It's thousands of pieces of paper that

21 I would be asking them questions about.

22        THE COURT:  Okay.

23        MS. MARZIANI:  And I physically couldn't get them

24 here.  I was like trying -- and then I thought, well, that

10:51:13  25 couldn't be what he wants.  He probably just wants us to start

it and get the exemptions figured out, and then we'll

conclude -- we'll set up times to do it for each individual

one.  And, you know, if it has to be by video because

Mr. Tsaparas is in Aspen, Colorado, you know, we would work

10:51:39     that out.

But physically, I couldn't bring all the pieces of

paper here.

THE COURT:  So the problem that you cited earlier

with doing Ms. McFadden's examination or with doing the --

10:51:51     yeah, Ms. McFadden's examination now is that, at least one of

the problems is that your clients need to be able to -- you

need to have the exemptions at least asserted or adjudicated

or am I misunderstanding it?

MR. GAVRILOS:  No, no, not at all.  We were not ever

10:52:08     objecting to Ms. McFadden's citation examination.  My comment

about, you know, the commingling of funds in the trial

transcript was to the necessity of that happening first.

Obviously as a partner, you know, living with a

judgment debtor, she's fair game for a citation examination.

10:52:23     There is no dispute for that.

The ultimate issue as to why it hasn't happened, you

know, within the parameters set forth in your order is simply

the request to conduct that examination needed to be worked

out first, because first it was requested to be in person in

10:52:38     Denver, which is not the county that she resides in.

1          Then the motion to extend the citation was granted.

2     After the motion to extend was granted, we were given three

3     dates, and it was 15 --

4          THE COURT:  The issue you raised about sequencing

5     though had to do with -- I'm sorry, it was something else.  It

6     was assertion of the exemptions and then this issue about

7     garnishments.

8          MR. GAVRILOS:  It was on the issue or rather the

9     contention that we can't proceed with --

10          THE COURT:  Okay.

11          MR. GAVRILOS:  -- the judgment debtors before we go

12     with Corey McFadden.  I don't believe there was --

13          THE COURT:  There was also this thing about the

14     garnishments that you mentioned a moment ago, that you can't

15     do a garnishment until the exemptions have been determined.

16     That's what you said, right?

17          MR. GAVRILOS:  Yes, that is what I've said.  And that

18     is what we're complaining about, Your Honor.  Opposing counsel

19     mentioned that we were looking for a time to assert our

20     exemptions.  That's not what we're complaining about.

21          We are raising the fact that the citations were

22     issued in May.  The production was made in August.  An

23     extension was granted.  No turnover orders were moved for by

24     opposing counsel.  Yet, bank accounts are frozen, employers

25     are being served with requests to not pay them.

1       THE COURT: Okay. I get that. You don't have to go

2  through the litany again.

3       So here is the deal, folks. And, again, I apologize

4  if you think that this is oppressive. You started this, okay.

10:53:44    5  You started this on the plaintiff's side by serving these

6  things and then letting them sit.

7       In my humble opinion that is what you did, because

8  nobody came to me at any point in time until quite recently

9  and said: We're not getting satisfaction from the defendants.

10:54:00   10  That didn't happen until quite recently.

11       So here is the deal. Right now it is 5 minutes to

12  11:00. I'm going to give you 15 minutes to talk, and that

13  doesn't mean yell, it means talk, and try to figure out what,

14  if anything, needs to be done today and what the sequence of

10:54:20   15  things is that needs to happen after this and the dates on

16  which it's going to happen. Is that clear enough?

17       MS. MARZIANI: Your Honor, it's very clear to me.

18       THE COURT: Okay, fine. I will walk back out here

19  when the big hand hits the 2, and I expect you to be able to

10:54:35   20  give me an answer to that question. If you can't and you are

21  in dispute, that's fine. I'm a judge. I'll make a decision.

22       But the decision is going to end up, as I said to

23  those people, you heard me say it, any decision when we are

24  talking about dates and stuff and line drawing is going to

10:54:48   25  have an element of arbitrariness, you'll do a better job of

1   this than I will.

2   MS. MARZIANI:  Thank you very much, Your Honor.

3   MR. GAVRILOS:  Thank you, Judge.

4   (Recess)

11:11:17   5   THE COURT:  Okay.  We're recalling the case.  We

6   don't need to give your names again.  So where are we?

7   MR. GAVRILOS:  Your Honor, we did speak.  I believe

8   we have an agreement.  I'll let counsel --

9   THE COURT:  Okay.

11:11:26   10   MR. GAVRILOS:  -- go after, if there is anything that

11   she disagrees with.

12   It's my understanding that what we would like to do

13   today is start with the claimed exemptions that were filed.

14   And counsel indicated which ones she agrees to, which ones she

11:11:39   15   does not agree to.

16   The ones that are agreed to we are fine memorializing

17   in an order, to be done with that part of the supplementary

18   proceedings.  The actual examinations of defendant Tsaparas

19   and Alexopoulos will be continued to whatever date you will

11:11:55   20   provide by Zoom.

21   And in the interim, both defendants will be permitted

22   one unfrozen account to use finances.

23   THE COURT:  Okay.  You started off saying

24   Ms. Marziani was going to explain it, and I think you then

11:12:07   25   explained it.

1       So is what he just said right or is there more to it

2  than that?

3       MS. MARZIANI:  I think that's correct.

4       THE COURT:  Okay.  So in terms of what we're doing

5  right now, obviously I'm going to have to enter an order of

6  some sort.  I'm going to ask you guys to kind of draft the

7  language of that to wordsmith it.  But it sounds like I'm

8  going to need to do something here in the courtroom with

9  somebody, and I'm just not clear on what -- no?

10       MS. MARZIANI:  No.  I don't --

11       MR. GAVRILOS:  I'm sorry, you leaned back.  I

12  couldn't --

13       THE COURT:  I'm going to need to do something here in

14  the courtroom with somebody aside from entering an order or

15  no?

16       MR. GAVRILOS:  Somebody, us two going through the

17  motion to claim exemptions.

18       THE COURT:  Yeah.

19       MR. GAVRILOS:  Not necessarily a citation

20  examination, yes.

21       THE COURT:  Okay, fine.  So let's do that.

22       MS. MARZIANI:  Okay.

23       THE COURT:  Let me just pull it up.  Docket number

24  298.  Okay.  I've got it up.

25       So who is going to talk first?

1    MR. GAVRILOS:  Yeah, I'm happy to just --

2    THE COURT:  Is it me?  That's fine.  Go ahead.

3    MR. GAVRILOS:  -- go down the checklist of the

4    exemptions that we're claiming in the order that I presented

11:13:03    5    them in the motion.

6    MS. MARZIANI:  Otherwise I can just tell you what I

7    agree to and what I don't agree to.

8    THE COURT:  Okay, fine.

9    MS. MARZIANI:  Okay.  So plaintiff agrees to the

11:13:09    10    statutory exemptions as outlined in Illinois law.

11    With Mr. Tsaparas, we also agree that the wage

12    exemption of 85 percent from M Sourcing LLC, and we believe it

13    should begin from when they were served with the citation to

14    discovery assets and --

11:13:38    15    THE COURT:  When you say "it should begin," what's

16    the "it"?

17    MS. MARZIANI:  That the deduction --

18    THE COURT:  Okay.

19    MS. MARZIANI:  -- should have begun with the service

11:13:45    20    of M Sourcing LLC, which was August 22nd, 2023.

21    I did provide a proposed order to counsel for M

22    Sourcing LLC, and we did file a motion for turnover of wages.

23    But in our motion for turnover of wages, I was looking at the

24    federal exemption, and I agree with counsel now that it's the

11:14:13    25    Illinois exemptions, which would be again 85 percent.

1        And I believe that in the motion for exemptions, that

2  counsel suggested that the amount payable to the plaintiff

3  then would be 2,884.60, my math said 2, but 1 or 2, for each

4  pay period.

11:14:43  5        And I concluded that from August 22nd to today, there

6  had been six payments.  And my math said that would have been

7  $17,307.72.  And then with each payment, each wage payment to

8  Mr. Tsaparas, the plaintiff would receive 2,884.62.  And

9  usually those paid on a monthly basis to the plaintiff.

11:15:21  10        MR. GAVRILOS:  Your Honor, if I may respond just on

11  this specific issue?

12        THE COURT:  So I think my question wasn't clear

13  enough.  So I'm trying to figure out what I need to do here,

14  okay.  And so you said -- that's what I'm trying to figure out

11:15:34  15  is what I need to do, because I'm sitting here, I've got to

16  figure out what I need to do, okay.

17        And I think what I heard you say is that we were

18  going to go through the exemptions.  You were going to say

19  what's agreed to and what's not agreed to.

11:15:45  20        MS. MARZIANI:  Yes.

21        THE COURT:  And then I was going to maybe have to

22  decide something on the stuff that's not agreed to.

23        MS. MARZIANI:  Yes.

24        THE COURT:  I think that's what I'm supposed to do.

11:15:51  25  Am I right so far?

1    MS. MARZIANI: Yes, correct.

2    THE COURT: All right, all right, all right. So then

3    you started off by saying: We agree to what Illinois law

4    requires. Not terribly helpful, because there may be a

11:16:01  5    dispute about what Illinois law requires.

6    So here is what I think what I would like to do. Do

7    you have in front of you the motion?

8    MS. MARZIANI: Yes.

9    THE COURT: Docket number 298, the motion to claim

11:16:10  10    exemptions.

11    MS. MARZIANI: Yes.

12    THE COURT: So there is a section involving

13    Mr. Tsaparas that starts on page 4, and it's numbered or it's

14    lettered A through E.

11:16:20  15    MS. MARZIANI: Yes.

16    THE COURT: And then there is a section regarding

17    Mr. Alexopoulos that starts at page 6, it's also lettered A

18    through G.

19    MS. MARZIANI: Yes.

11:16:26  20    THE COURT: It would be helpful to me is if you could

21    go through each of those letters and say: We agree to this

22    one. We disagree with that one. Just give me yeses or noes

23    and then we could go back on the disagree ones and you can

24    tell me specifically what you disagree to.

11:16:40  25    MS. MARZIANI: Okay.

1        THE COURT:  Okay.

2        MS. MARZIANI:  I'm ready.

3        THE COURT:  All right.  Go ahead.

4        MS. MARZIANI:  So A is the exemption related to wages

11:16:44    5    and --

6        THE COURT:  That's the one you have an issue about?

7    That's the one you were just talking about right now?

8        MS. MARZIANI:  It's no issue.  We agree with the --

9        MR. GAVRILOS:  No, no.  There is an issue.  But keep

11:16:51   10    going.

11       THE COURT:  Okay.

12       MS. MARZIANI:  We agree with the 85 percent.

13       THE COURT:  Okay.

14       MS. MARZIANI:  The issue that counsel will advise you

11:17:01   15    about is when does that, when does the 15 percent have to be

16    paid to the plaintiff.

17       THE COURT:  Okay.  Thanks.

18       MS. MARZIANI:  Okay.

19       THE COURT:  We'll come back to these.  I just want to

11:17:14   20    get the laundry list first.

21       MS. MARZIANI:  Yes, yes, yes.  So then B, the wild

22    card exemption under Illinois law gets a $4,000 wild card

23    exemption on whatever property you have.

24       What is stated here we disagree with, only because we

11:17:35   25    don't have enough information as to the value of the items

alleged to be their assets.  And we agree you get a $4,000

wild card exemption.  I just don't know if the piece of

jewelry in that paragraph, what it is and if it's really worth

$3,000.  But I don't -- or the firearm is worth $2500.  I

don't know.

And I don't believe that, I don't believe that we

have to reach a decision on that until the plaintiff says, I'd

like those items turned over.  Once we know what they are,

maybe they're worth substantially more than the exemption.  So

that's my answer on B.

On C, there is a $2400 for one vehicle exemption

under Illinois law.  For Mr. Tsaparas, they list a 2017

Ducati.  They list a 2002 BMW and a 1991 Lancia.

MS. MARZIANI:  Lancia.  I don't know, I don't know,

you know, the mileage.  I don't know -- I don't have any way

of knowing what they could be worth.  But I agree that it's a

$2400 exemption on one vehicle.

There are three vehicles listed there.  And that's

where my disagreement comes in, is the description is

insufficient to allow us to say whether or not, you know, the

Ducati is free and clear or not.

D is family's personal clothing, schoolbooks and

family photos.  I agree that there is an exemption.  The

problem that I have is there may be items of clothing that

have substantial value.

1    Ms. McFadden's business itself is selling used or

2    gently used items of personal property, like clothes and that.

3    And without more of a description, the age, the condition of

4    the items, there is no way of telling.  But, again, unless

11:20:20    5    there is a turnover order, we don't need to argue about the

6    exemption.

7    MR. GAVRILOS:  Well, Judge, I guess I'm just going to

8    jump in.  I'm kind of surprised to hear all of that, because

9    that doesn't sound like there's a whole lot of agreement on

11:20:35    10   our exemptions.

11   THE COURT:  That's the way I'm listening to it,

12   nothing is agreed to.

13   So, look, I'm just going to be real practical about

14   this.  The citation is currently extended through -- what was

11:20:43    15   the date, December the --

16   MR. GAVRILOS:  I actually thought it was January 4th,

17   but it may be December 20th.  I think that was the date that

18   counsel stated.

19   MS. MARZIANI:  It's December, I thought it was

11:20:50    20   December 20th.

21   THE COURT:  December 20th sounds right to me.

22   Whatever it is.  Here is the deal, you are not going to be

23   done with this by December the 20th.  You are going to have to

24   convince me to extend them again.

11:21:01    25   And so basically what I am -- what my take-away from

1    what you just said is we can't pretty much do a darned thing

2    today because you don't know, A, you don't know the value of

3    the jewelry.  You don't know what the cars are worth.  You

4    don't know how much mileage is on them.  You don't know

11:21:18    5    whether there is extremely valuable items of personal

6    clothing.  And you don't know any of that, and there is a

7    reason why you don't know any of it, because you haven't done

8    the citation examinations yet.  That's why you don't know any

9    of it, okay.  That's why we were here today.

11:21:32    10    So basically what I'm hearing out of this, at least

11    Mr. Tsaparas, who we've now gone through, I pretty much can't

12    do anything today.  That's fine.  I can live with that, okay.

13    But you're going have to convince yours truly to

14    extend these citations again.  And part of the decision-making

11:21:47    15    process on that that I am going to go through is whether I

16    think you have been reasonably diligent in pursuing these

17    matters since you served the citations over six and a half

18    months ago.  And right now I'm leaning against you.

19    MS. MARZIANI:  I understand that completely.

11:22:02    20    THE COURT:  I'm leaning against you.  So okay, fine.

21    If there is nothing for me to decide today, all well and good,

22    then I'm going to proceed to decide --

23    MS. MARZIANI:  Well, Your Honor, I --

24    THE COURT:  -- this motion -- I'm in the middle of a

11:22:16    25    sentence.

1       MS. MARZIANI:  Oh, sorry.

2       THE COURT:  Now I lost my train of thought because

3  you interrupted me.  So now I've got to pull up the

4  transcript.  Give me a minute.

11:22:36    5       Never mind.  I don't know what I was going to say.

6       MR. GAVRILOS:  Your Honor, I believe you were about

7  to make a ruling on the motion for turnover that was filed.

8       THE COURT:  You're not going to get the turnover

9  until the exemptions are adjudicated.  You're telling me right

11:22:49   10  now I can't adjudicate the exemptions because you don't have

11  enough info.  You don't have enough info for me to decide

12  whether it's okay for them to assert the three grand on the

13  jewelry, whether it's okay for them to assert the other

14  thousand dollars from the wild card exemption on the BMW and

11:23:01   15  what exactly that means.

16       You are telling me on some of this stuff I don't have

17  to decide it now because there is no motion for turnover

18  order.  You are telling me everything is going down the road.

19       That's okay.  That's okay.  But there is consequences

11:23:13   20  to all of this stuff.  One of the consequences may be you

21  don't get another extension of the citations.  That may be a

22  consequence.  And they expire in, what, four weeks, 30 days or

23  something like that.

24       Another consequence is going to be I have been told,

11:23:25   25  and I think it's right, that you don't get garnishment until

1   the exemptions are adjudicated.  Am I wrong about that?

2            MS. MARZIANI:  You are.

3            THE COURT:  What's wrong about that?

4            MS. MARZIANI:  Because we've agreed on the exemptions

5   for wages.  And so an order could be entered today --

6            THE COURT:  On the wages?

7            MS. MARZIANI:  On wages, absolutely.  We agree on --

8            THE COURT:  Basically what you are saying is that the

9   wild card exemption doesn't have anything to do with that.

10           MS. MARZIANI:  Not at all, no.

11           THE COURT:  Cars don't have anything to do with that.

12           MS. MARZIANI:  No.

13           THE COURT:  The jewelry doesn't have anything to do

14  with that.

15           MS. MARZIANI:  No, they don't have anything to do

16  with it.

17           THE COURT:  Okay.  Pause.

18           What about that?

19           MR. GAVRILOS:  Your Honor, the very first case that I

20  cited in our motion reads, "To qualify as wages for purposes

21  of wage deduction and garnishment, money has to be owed by an

22  employer to a judgment debtor."

23           So backpay wages that have already been transferred

24  to the debtor are not at issue for a wage deduction or

25  garnishment pursuant to this case.  So that is the

1 disagreement on the wages, is that it should not be as of the

2 date of service of the citation, but the date that a turnover

3 order or wage deduction order is entered and served on that

4 employer.

11:24:19  5        THE COURT:  Okay.  Hang on a second.  Let me just

6 process that for a minute.  So you are not saying, I take it

7 then, that I have to rule on all of these other wild card and

8 other exemptions for there to be a turnover order.

9        What you are saying is the dispute is when the

11:24:36 10 turnover of wages starts, the turnover of the percentage of

11 wages that the judgment creditor is entitled to starts,

12 whether it starts now, upon entry of the turnover order, if I

13 enter one, or whether it goes back to whenever.

14        MR. GAVRILOS:  For purposes of the exemption to wages

11:24:53 15 only, yes.

16        THE COURT:  Yeah, right, okay.  And there is no

17 dispute on the amount of the exemption to wages.  You said

18 there was an issue about federal or state.  But you agree it's

19 state?

11:24:58 20        MS. MARZIANI:  We agree, we agree that Illinois --

21        THE COURT:  Okay.

22        MS. MARZIANI:  That's why I prefaced this with we

23 agree on Illinois.

24        THE COURT:  So what he's telling me is that you don't

11:25:07 25 get -- it doesn't look back.  It's from the date of the

1    turnover order forward.  Do you think that's right or do you
2    think that's wrong?
3         MS. MARZIANI:  No, Your Honor.  What I think that
4    counsel is mentioning is that if the wages are already in the
11:25:20  5    hands of the judgment debtor, that those wages we wouldn't be
6    able to get.  But what --
7         THE COURT:  That's just like any other property
8    basically.
9         MS. MARZIANI:  Right, right.  I'd have to get it some
11:25:33  10    other way.
11         THE COURT:  Yeah.
12         MS. MARZIANI:  But we're entitled to the wages, the
13    15 percent in this situation from the date of service on the
14    employer.  And so that's what our position is.  I agree --
11:25:51  15         THE COURT:  Okay.  So, and maybe it's just I don't
16    understand all this lingo, okay, but let me just, let me just
17    put some numbers on this and give you an example.
18         So let's say in my hypothetical example the citation,
19    today is the 20th of November, let's say a citation, the
11:26:04  20    citation was served on the 20th of September, so two months
21    ago.  And on the 21st of September, the employer paid $10,000
22    in wages to the judgment debtor.  And on the 21st of October,
23    the employer paid $10,000 in wages to the judgment debtor.
24    And then on the 21st of November, the Judge issues a turnover
11:26:24  25    order.

1          Do you get to take it out of -- do you get that

2     $10,000, either of those two $10,000 payments that were

3     already made?

4          MS. MARZIANI:  We get them from the employer, because

11:26:32     5     they should have, they should have withheld because they were

6     served with a citation to withhold then.

7          THE COURT:  Got it.  And let me, again, let me

8     translate that, you'll tell me if I am getting it right.  What

9     you are saying is that if the employer was served with

11:26:48    10     whatever process they were served with, the employer is

11     supposed to know at that point there is a problem here --

12          MS. MARZIANI:  Yes.

13          THE COURT:  -- I've got to withhold something.

14          MS. MARZIANI:  Call me up.

11:26:56    15          THE COURT:  If the employer goes ahead and pays the

16     full amount of the wages to the employee, you don't go grab it

17     from the employee right then.  As you said, you have to get

18     that from the employee in some other way.

19          MS. MARZIANI:  Yes.

11:27:05    20          THE COURT:  But the employer may be on the hook.

21          MS. MARZIANI:  May be on the hook.  And oftentimes in

22     this situation you have an employer that goes:  Oh, my gosh, I

23     didn't understand how this all worked, blah, blah, blah.

24          THE COURT:  Yeah, yeah, yeah.  So when the employer

11:27:15    25     is still on the hook in this situation, let's just say in my

1  hypothetical they are, what is the order that the Judge enters

2  that tells the employer that?  Is the turnover order that you

3  are asking for, does it cover this point, in other words?

4          MS. MARZIANI:  The turnover order oftentimes covers

11:27:34  5  this point and says that the wages from, 15 percent of the

6  wages from the date of service on the employer should be paid

7  immediately.

8          THE COURT:  When did the employers get served with

9  these things?

11:27:47  10         MS. MARZIANI:  So with M Sourcing --

11         THE COURT:  That's who we're talking about, right.

12         MS. MARZIANI:  Yeah, August 22nd.

13         THE COURT:  Okay.

14         MS. MARZIANI:  And I had conversations with their

11:27:57  15  lawyer and I said --

16         THE COURT:  Okay.

17         MS. MARZIANI:  -- here is a draft order.

18         THE COURT:  Just answer the questions I'm asking.  I

19  don't need more information than I want at this point.

11:28:06  20         MS. MARZIANI:  Okay.

21         THE COURT:  Okay.  So here is what I am taking from

22  counsel's presentation here, that as far as your clients are

23  concerned, if they've already been paid the wages, you are

24  right, she doesn't get the 85 percent or the 80 percent or

11:28:19  25  whatever it is of that money.

1     MS. MARZIANI:  15.

2     THE COURT:  She has to get that in some other way.

3     But the employer that paid out the wages after the date of

4     service of the document, August 22nd, may be on the hook, is

11:28:33   5     on the hook for the amount that they paid out, not taking into

6     account that they might get -- they might have to withhold

7     some.

8     MR. GAVRILOS:  No, Your Honor, I don't believe they

9     would be on the hook for that.  Keeping in mind that present

11:28:46   10    counsels have not filed an appearance on behalf of the

11    employer.

12    THE COURT:  I was just going to ask, are you their

13    lawyer?

14    MR. GAVRILOS:  No.  But it's our understanding that

11:28:53   15    the service of the citation is not necessarily what triggers

16    payment of wages, right.  It is a wage deduction or

17    garnishment order, because that action is to the employer,

18    whereas a turnover is to the judgment debtor defendant, right.

19    So to the extent she's asking for the employer to

11:29:10   20    turn over 15 percent of the wages, he can only turn over wages

21    that have not yet been paid.

22    THE COURT:  I'm just looking at the motion for a

23    turnover order.

24    MR. GAVRILOS:  That case citation was page 4.

11:29:29   25    THE COURT:  Yeah.  So the motion for turnover order,

1    and I'm looking at the one on Mr. Tsaparas at this point, it's

2    docket number 291, in the last paragraphs, where it says this

3    is what you want me to do, A says "Enter a turnover order/wage

4    deduction order against Spiro Tsaparas and M Sourcing LLC in

11:29:49    5    the amount of 25 percent" -- which is the wrong amount.

6            MS. MARZIANI:  It's wrong.

7            THE COURT:  It should be 15 percent.

8            MS. MARZIANI:  Right, it's 15.

9            THE COURT:  "15 percent of defendant Spiro Tsaparas'

11:29:57    10    wages from May 25, 2023 through October 31, 2023 of $56,336."

11    That number is wrong.

12            MS. MARZIANI:  Yes.

13            THE COURT:  But even that has it going back, not to

14    August the 22nd --

11:30:10    15            MS. MARZIANI:  Exactly.

16            THE COURT:  -- to May the 5th.  So that's wrong, too?

17            MS. MARZIANI:  There is an argument for it.  And I

18    will concede that August 22nd is the right number.

19            THE COURT:  All right.  But even if we change that,

11:30:22    20    that order asks for the order -- this motion asks for the

21    order to run on the backward-looking aspect of it both against

22    M Sourcing and Mr. Tsaparas.  And you just told me that's not

23    right.  The back-looking part of it is just M Sourcing.

24            MS. MARZIANI:  So we'll concede that as well.

11:30:50    25            THE COURT:  Okay.  And then the second thing it asks

1  for is it asks for a separate turnover order/wage deduction

2  order against Tsaparas and M Sourcing going forward.

3           MS. MARZIANI:  Going forward.

4           THE COURT:  Yeah, okay.

5           And your position, your position on what I should do

6  on this motion today is what exactly?

7           MR. GAVRILOS:  On the motion for turnover?

8           THE COURT:  Yeah.  Deny it outright, grant it in part

9  in a different way, and if so, what, or something else?

10           MR. GAVRILOS:  Well, in our opinion it should be

11  denied outright for two reasons.  With respect to any action

12  that is compelled by Mr. Tsaparas, he cannot be compelled to

13  turn over anything before his, all of his exemptions are

14  validly ruled on.

15           THE COURT:  So this is a big circle here.

16           MR. GAVRILOS:  Right.

17           THE COURT:  It's a big circle.  We keep getting back

18  to that.

19           Okay.  So in order for him --

20           You've got to understand why I'm frustrated,

21  Ms. Marziani, right?  You've got to understand why I'm

22  frustrated.  We've been out here talking about this for an

23  hour now, and I feel like we're -- you remember the game

24  Monopoly?  We're still on Go.  We haven't even gotten to

25  Baltic Avenue yet.

1      MS. MARZIANI:  May I say something?

2      THE COURT:  We haven't moved anywhere.  I've got --

3  he's saying I've got to adjudicate the exemptions before I can

4  do that.  Why do I have to adjudicate an exemption that you

11:32:17   5  are saying that you are going to assert on jewelry and a car

6  before I can enter a wage deduction order?

7      MR. GAVRILOS:  So the second part of the objection to

8  the turnover order regards action compelled by the employer.

9      THE COURT:  Are you going to answer the question I

11:32:30   10  just asked or are you going to answer some other question that

11  I didn't ask you?

12      MR. GAVRILOS:  Because I suppose at present what

13  opposing counsel is categorizing as wages is not wages,

14  because wages are unpaid.  What is being categorized as wages

11:32:43   15  now is just simply Mr. Tsaparas's money, right.

16      So that's why it is critical that these exemptions be

17  heard, because what she's looking for is just a turnover of

18  his funds generally.  They lost --

19      THE COURT:  We're talking about a motion.  I just

11:32:57   20  quoted it for God's sake.  I just quoted it.  It's not what

21  it's asking for.  It's asking for a wage deduction, a turnover

22  order/wage deduction order.

23      And I get -- and she just conceded a couple of

24  things.  She conceded it's not 25 percent.  She conceded as to

11:33:12   25  the company, it doesn't go backward.

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | MR. GAVRILOS:  So the second part of that, the               |
|          | 2  | turnover or wage deductions as opposed to future wages that  |
|          | 3  | are to be garnished per the Illinois statutes, there is no   |
|          | 4  | objection to that.  And that is essentially what we're looking|
| 11:33:28 | 5  | for.                                                         |
|          | 6  | THE COURT:  Yay, there is something I can do.                 |
|          | 7  | MS. MARZIANI:  I think you should do it.                      |
|          | 8  | THE COURT:  There is something I can do.  I can enter         |
|          | 9  | the second part of it, right?                                |
| 11:33:35 | 10 | MR. GAVRILOS:  On the motion for turnover?                    |
|          | 11 | THE COURT:  Yeah.                                            |
|          | 12 | MR. GAVRILOS:  Correct.  And, Your Honor, just one --         |
|          | 13 | THE COURT:  Hallelujah.                                      |
|          | 14 | MR. GAVRILOS:  One note I want to make.  I'm not sure         |
| 11:33:45 | 15 | the Court is aware, M Sourcing is a Colorado entity.          |
|          | 16 | THE COURT:  So what?                                         |
|          | 17 | MR. GAVRILOS:  So it's our understanding that the            |
|          | 18 | order of this Court has to be delivered through the Colorado  |
|          | 19 | clerk of the county where they reside.  And that was another  |
| 11:33:54 | 20 | good-faith basis --                                          |
|          | 21 | THE COURT:  What do I care about that?  Are you              |
|          | 22 | saying I can't enter an order.  It has to be done in Colorado.|
|          | 23 | Are you just saying it's just how it gets served?            |
|          | 24 | MR. GAVRILOS:  Just how it gets served, Your Honor.          |
| 11:34:04 | 25 | THE COURT:  Why do I care about that?                        |

1        MR. GAVRILOS:  Well, because to date there have been

2  direct communications from plaintiff to the employers before

3  the turnover --

4        THE COURT:  Not my problem right now.

11:34:12    5        MR. GAVRILOS:  Okay.

6        THE COURT:  Okay.  I don't -- it's above my pay grade

7  to serve orders.  I'm not going to worry about that at this

8  point.

9        MR. GAVRILOS:  Okay.

11:34:25   10        THE COURT:  Okay.  So I now have an hour and a half

11  in, I've ascertained one thing that I can do.  That's a good

12  thing.

13        So interpreting what you said a second ago, I think

14  what you are telling me, and you'll tell me if I am getting it

11:34:43  15  wrong, is that as to wages that have already been paid, that's

16  just property that Mr. Tsaparas has, and I can't do anything

17  about that in terms of a turnover order or anything else until

18  I've adjudicated his exemptions because his exemptions apply

19  to property that he has.

11:35:02  20        MR. GAVRILOS:  That's correct.

21        THE COURT:  Did I get it right?

22        MR. GAVRILOS:  Yes, Your Honor.

23        THE COURT:  It kind of sounds like it ought to be

24  right to me.  Is it wrong?  I'm talking about money that he's

11:35:09  25  already been paid in wages from May to now or from August to

1    now or whatever it is.

2            MS. MARZIANI:  If all you are discussing right now is

3    the wage deduction turnover order, I don't disagree.  But

4    going beyond that, I would disagree.

11:35:23   5            THE COURT:  What is the part that you disagree with?

6            MS. MARZIANI:  I don't think that there has to be a

7    determination on the firearms, the jewelry, the vehicles, the

8    clothing until plaintiff says:  You know what, I'd like to

9    have those.  After we find out what they are.

11:35:44  10            The cash in bank accounts, there is a $4,000 wild

11   card exemption.  We don't disagree with that, but --

12           THE COURT:  It sounds like he doesn't want to assert

13   it on his bank account.  It sounds like he wants to assert it

14   on this ring or whatever it is.

11:35:58  15           MS. MARZIANI:  Right.  So if that's what he wants to

16   assert it on, that's fine.  We're not talking about anything

17   other than right now wages.

18           THE COURT:  One of the things that counsel said

19   earlier was that you thought that -- he thought that there was

11:36:12  20   an agreement about having access to a bank account.

21           MS. MARZIANI:  Yes.

22           THE COURT:  Okay.  So because I too would like to

23   leave sometime today like everybody else, perhaps we could

24   kind of pretend like I'm a judge in the Circuit Court of Cook

11:36:31  25   County and you guys are going to write out the order that you

1   want me to enter, and then I'll look at it and decide if I

2   have to tweak it.  And then we can, and then we'll get it

3   entered.

4          MS. MARZIANI:  Your Honor, we also I think have an

11:36:44   5   agreement about the wages.

6          THE COURT:  Fine.  Put it in an order.  I just want

7   to be able to know what I am deciding and know what I'm not

8   deciding.

9          So for the last 30 minutes, I started off being told

11:37:00   10   "We think we have an agreement on everything except one

11   thing."  And then that took about 30 seconds.  And then for

12   the other 29 and a half minutes, it was that this is where the

13   problems are and this is what we haven't agreed to.

14          So like I said, I want to be able to do something.  I

11:37:18   15   want to know what I have, what I'm able to do.  I want know

16   what is left on the table.  And I want to know when what is

17   left on the table is going to get done and how it's going to

18   get done.  And so that's what has to be done.

19          None of you guys get to leave until I know that.

11:37:32   20   It's just that simple.  You don't get to leave until I know

21   that.  If that's 9:00 o'clock tonight, you don't get to leave

22   until I know that.  It's in your interest for me to know it

23   sooner rather than later.

24          So the only way for me to do that, I tried the talk

11:37:45   25   about it and talk to me thing.  It didn't work, okay.  So what

we're going to now is you are going to write it out. You are

going to write out this agreed order. And then there is going

to be some sort of a proposal as to what -- and the agreed

order is to include this is the process that's going to happen

11:38:03    from here on in to decide what's left. That's what you are

going to do, okay. And you have as much time to do that as

you want to take.

MR. GAVRILOS: Your Honor, if I may just submit one

more comment respectfully?

11:38:15    THE COURT: Nah. I'm done talking to you guys at

this point.

MR. GAVRILOS: Thank you.

THE COURT: Do what I said. Nobody gets to leave

until it's done. That's an order.

11:38:29    (Recess)

THE COURT: All right. Do you have something for me?

MS. HERRING: We do.

MR. GAVRILOS: We do, Judge.

THE COURT: Okay. Can I just look at it?

12:29:44    MR. GAVRILOS: My apologies. May I approach?

THE COURT: Yes, that's fine.

MR. GAVRILOS: Your Honor, the one thing that we did

discuss is potentially parsing out some of the wage deduction

stuff for a separate order, but I leave that up to you.

12:30:27    THE COURT: When you say "the wage deduction order,"

1    do you mean the last two paragraphs of this?

2              MS. MARZIANI:  Yes, I think so.

3              THE COURT:  One regarding Estia and one regarding M

4    Sourcing?

5              MS. MARZIANI:  Yes.

6              MR. GAVRILOS:  Yes.

7              THE COURT:  So here would be my suggestion, is that

8    you keep it in this and that you also do a separate order on

9    one of those so you have something clean you can serve on each

10   one of those people.

11             MR. GAVRILOS:  Understood.

12             MS. HERRING:  So, Judge, the other issue, the

13   separate order was with the US Bank account for Mr. Tsaparas.

14   He needs -- the bank has explained that he needs a separate

15   court order.

16             THE COURT:  Something that just talks about that?

17             MS. HERRING:  Yeah, so that we can just hand it to

18   them.  So we would just ask that one to be separated out.

19             MS. MARZIANI:  So there would be three separate.

20             THE COURT:  Right, okay.  That all seems fine to me.

21             The one thing I'm going to add in is having you file

22   some kind of a status report after the last date in here, you

23   know, just right around the last date.  So here would be my

24   suggestion.  First of all, you can take -- I'm going to give

25   this back to you.  You can take the proposed line out of the

1  heading and then just do whatever cutting and pasting you need

2  to do to have the other three orders.  Put a signature line

3  and a date in it for me.  And email them all, email the Word

4  versions all to Melissa, and they'll get entered today.

12:31:55   5         MR. GAVRILOS:  Sound good, Judge.

6         MS. HERRING:  Great.

7         MR. GAVRILOS:  Just one quick point of clarification.

8  And I thought of this right as I stood here.  I put in the

9  caption that we're here on plaintiff's motion for turnover.

12:32:03  10  And I recall the verbiage of your ruling was like half of it

11  was denied, the other half is entered and continued.  Or how

12  do we want to phrase that for purposes of this order?

13         THE COURT:  I don't know.  That's what I was hoping

14  you guys would do.

12:32:16  15         MR. GAVRILOS:  Well, it was more so just your

16  perspective on the turnover order for back wages and then

17  moving forward.  I guess can we say that it was denied as to

18  the first part and then withdrawn as --

19         MS. MARZIANI:  Oh, I would --

12:32:28  20         THE COURT:  I think the language in the order

21  embodies what the ruling is.  I'm just going to terminate it

22  as a, quote-unquote, pending motion at this point.

23         MR. GAVRILOS:  Okay.

24         MS. MARZIANI:  I think that would be --

12:32:36  25         MR. GAVRILOS:  So I can put in there that the motion

1    is terminated then?  We're giving --

2           THE COURT:  You don't need to.  We'll just do that on

3    our end.

4           MS. MARZIANI:  You don't need to.

12:32:43    5           MR. GAVRILOS:  Okay.

6           THE COURT:  We'll just do that on our end.  So you're

7    going to send four orders to Melissa.  She'll give you the

8    email address.  I'll get them all entered today.  We'll enter

9    a date for people to file a status report, which will probably

12:32:54    10   be right around the last date that you've got in there.  And

11   then I won't need to have you come back anymore.

12          MS. HERRING:  Judge, there is a pending petition that

13   NHC filed regarding Mr. Alexopoulos's house.  Our response is

14   due on 11/30.  That's still on our radar.

12:33:10    15          THE COURT:  Okay.  That's still out there?

16          MS. HERRING:  Yes.

17          THE COURT:  Okay, fine.  Okay, great.  Thanks.

18   Thanks for the work.  Appreciate it.

19          MR. GAVRILOS:  Thank you, Judge.

12:33:17    20          MS. MARZIANI:  Thank you, Judge.  Happy Thanksgiving.

21        (Proceedings concluded)

22                    C E R T I F I C A T E
             I, Jennifer S. Costales, do hereby certify that the
23   foregoing is a complete, true, and accurate transcript of the
     proceedings had in the above-entitled case before the
24   Honorable MATTHEW F. KENNELLY, one of the judges of said
     Court, at Chicago, Illinois, on November 22, 2023.

25
                          */s/ Jennifer Costales, CRR, RMR, CRC*