IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NHC LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19 C 6332 |
| | ) | |
| CENTAUR CONSTRUCTION CO., et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**CORRECTED**
<u>**ORDER REGARDING CERTAIN POST-JUDGMENT MATTERS**</u>

The plaintiff in this case, NHC LLC, obtained a judgment in excess of $22 million against an entity, Centaur Construction Co., and its two principals, Spiro Tsaparas and Peter Alexopoulos. The judgment is on appeal. The defendants, however, did not post a bond and did not obtain a stay pending appeal. As a result, NHC has proceeded with collection-related activity before this Court. This largely has involved the service of citations to discover assets as well as extensive discovery to attempt to find assets of the defendants—mostly the individual defendants, as Centaur appears to be defunct.

The post-judgment proceedings have been particularly contentious and have occupied a great deal of the litigants', the lawyers', and the Court's time. In this order, the Court addresses a number of pending matters in advance of the next in-person hearing, set for July 15, 2024.

**1.     Spiro Tsaparas contempt and installment payments order (dkt. no. 351 ff.)**

At a hearing held on April 23, 2024, the Court found Spiro Tsaparas in contempt due to his repeated and extensive violations of the restraining provisions of the citation to discover assets that was served upon him. *See* 735 ILCS 5/2-1402(f)(1) (a "court

may punish any party who violates the restraining provision of a citation as and for a contempt"); Ill. S. Ct. R. 277(h) ("Any person who fails to obey a citation . . . may be punished for contempt."). This arose from Mr. Tsaparas's transfers totaling over $397,000 in violation of the citation that had been served upon him. The Court overruled Mr. Tsaparas's contention that these funds were exempt from turnover because they had been, at some point, wages or salary paid to him.

NHC sought, among other things, an order directing Mr. Tsaparas to pay the $397,077.31 in dissipated funds to NHC in monthly installments of $40,000 each, as well as an order directing him to pay the balance of the judgment in monthly installments in an amount to be determined. The Court took the matter of the appropriate sanction(s) under advisement and ordered further briefing regarding the amount of any monthly installments.

On the latter point, Mr. Tsaparas has contended that an installment payment order is inappropriate under 735 ILCS 5/2-1402(j), which states that "[t]his Section does not grant the power to any court to order installment or other payments from, or compel the sale, delivery, surrender, assignment or conveyance of any property exempt by statute from the enforcement of a judgment thereon, a deduction order, garnishment, attachment, sequestration, process or other levy or seizure." The Court overruled that argument at the April 23 hearing. In particular, the statute says only that "*this Section*" does not authorize an installment payments order. The Court is not relying on the cited statute regarding citations as authority for the proposed order. Rather, it is relying on its contempt authority, and "[c]ourts have broad discretion to fashion contempt remedies . . . ." *FTC v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009); *GE Betz, Inc. v. Zee Co.*, 718

F.3d 615, 628 (7th Cir. 2013) (Illinois law "give[s] the court broad power to compel the application of discovered assets or income in order to satisfy a judgment" (citation omitted)). In this situation, Mr. Tsaparas obtained the benefit of nearly $400,000 in funds in direct violation of a citation to discover assets that barred him from dissipating those funds. Repayment of the funds in installments as requested is appropriate.

As for the amount of the payments, the Court directs Mr. Tsaparas to pay the $397,077.31 in monthly installments of $25,000 until it is paid in full. The Court finds this to be a reasonable amount based on Mr. Tsaparas's income and *reasonable* monthly living expenses—not his *actual* expenditures, which surpass what is reasonable by a significant amount (including an annual salary of $168,000 per year paid to a "personal assistant").[1] The first such payment will be due by no later than July 30, 2024, and each monthly payment will be due by no later than the 30th of each month thereafter. Starting in August 2024, Mr. Tsaparas will also be required to file with the Court on the 10th of each month (or the next business day after the 10th, if that falls on a weekend or holiday), an accounting under penalty of perjury listing his monthly income and expenditures (including any payments on the judgment and on this installment order), as well as his assets at current market value. This is so that the Court can monitor his compliance with the contempt sanction and to enable the Court to adjust the amount if appropriate.

The Court wishes to make it clear that this $25,000 per month obligation in no

---

[1] To be clear, this is most emphatically *not* a determination that Mr. Tsaparas is free to dissipate whatever he wants above the $25,000 monthly payments or that his transfers to his assistant or anyone else are appropriate or conform to the citation (they don't). Rather it is a determination regard the appropriate sanction for Mr. Tsaparas's contempt.

3

way reduces or otherwise affects the wage deduction order previously entered. The Court reserves the right to increase the amount of the installment payments if appropriate.

The Court declines at this time to enter an order directing payment of the remainder of the judgment in installments, as requested by NHC. The Court does not believe this to be an appropriate exercise of its contempt power. A contempt sanction must be premised upon, among other things, "the nature of the harm" caused by the contemnor. *Trudeau*, 579 F.3d at 771. Mr. Tsaparas's contempt specifically involved his dissipation of the $397,000, and it is therefore appropriate for a remedial sanction to be targeted similarly.

The Court also extends the citations served upon Mr. Tsaparas and the banks where he has account for another approximately six months, through January 31, 2025. This is appropriate given his studied and repeated violations of the citation's restraining provision.

## 2. Motion for turnover order regarding Corri McFadden/EDropOff Chicago (dkt. 338 ff.)

Testimony by Mr. Tsaparas's domestic partner Corri McFadden at the jury trial in this case established that transfers totaling about $750,000 had been made to her from Centaur at the direction of Mr. Tsaparas and that the transfers constituted loans from either Centaur or Mr. Tsaparas. The Court has so found and reaffirms that finding now. In short, Ms. McFadden owes this money to a judgment debtor.

NHC has moved for an order directing Ms. McFadden to turn over the funds. As far as the Court can determine, she is no longer in possession of the funds at this point, but that is of no consequence. *See W. Bend Mut. Ins. Co. v. Belmont State Corp.*, No.

4

09 C 354, 2010 WL 3700834, at *6-7 (N.D. Ill. Sept. 9, 2010) (St. Eve, J.). Under the law, as explained by Judge St. Eve in *West Bend Mutual*, as well as in other authorities cited by NHC, NHC may recover from McFadden if it has shown she is indebted to a judgment debtor—which it has established via McFadden's own testimony and records showing the transfers from Centaur. Ms. McFadden's contention, made relatively recently, that these represented monetary exchanges 'integral to maintaining home life" is directly contrary to her sworn testimony under oath, and it is not supported in any event.

The Court will therefore enter judgment against Ms. McFadden and in favor of NHC directing her to turn over $751,058.07 to NHC. NHC is directed to prepare a proposed judgment order, respondent is directed to review it as to form, and a Word version is to be provided to Judge Kennelly's proposed order e-mail address by July 17, 2024.

NHC has not yet established at this point a basis to enter a judgment against Ms. McFadden's company EDropOff, LLC. That would, in the Court's view, require a finding that EDropOff is her alter ego or is otherwise responsible for repayment of the transfers, which NHC has not established to date. The turnover motion is therefore denied without prejudice with respect to EDropOff.

3. **Motion for turnover order (2) regarding Peter Alexopoulos (dkt. 408 & 420 ff.)**

This motion by NHC, filed in May 2024, concerns transfers by Peter Alexopoulos following service of citations upon him on May 19, 2023 (there were also citations later served on banks where he has accounts, specifically, Busey Bank on October 7, 2023, and Village Bank & Trust on May 2, 2024). The total of the transfers is $138,449.75.

5

NHC seeks a finding of contempt and an order requiring Mr. Alexopoulos to pay that amount in equal monthly installments of $10,000, as well as extension of the citations.

In his response, filed in mid-June, Mr. Alexopoulos makes the following arguments:

- At least some of the transfers were made from a joint account he holds with his spouse and were made for "necessary living expenses," mainly payment of monthly bills.
- Some of the transfers were made from a Busey Bank account held by Sportsman Resources Training, which did not receive a citation until May 23, 2024, after the transfers were made, and thus are not a basis to hold Mr. Alexopoulos in contempt.
- All the funds in the Village Bank account, and at least some of the other transfers, involve the proceeds of wages paid to Mr. Alexopoulos and are thus exempt from further execution beyond the wage deduction order previously entered.

The Court addresses the last point first and overrules it. The Court previously overruled an identical argument made by Mr. Tsaparas in a similar context. Among other things, the wage deduction statute, defines wages as "any . . . compensation *owed by* an employer to a judgment debtor." 735 ILCS 5/12-801 (emphasis added). Once wages are paid, they are no longer owed and thus cease to be wages. *See PrivateBank and Trust Co. v. Gatto*, 2018 IL App (2d) 170396-U, ¶¶ 18-21 ("Once [the judgment debtor] deposits the wages into a bank account . . . the funds become fair game for creditors. An insolvent person may not accumulate and shelter funds in a

6

bank account simply because they *derive from* wages. It is entirely rational that the Legislature would enact wage garnishment caps as a limited, non-bankruptcy protection for accrued wages while leaving the wild card exemption [735 ILCS 5/12-1001(b)] as the sole source of protection for paid wages." (quoting *In re Thum*, 329 B.R. 848, 855 (Bankr. C.D. Il. 2005) (emphasis added)); *see also PNC Bank v. Udell*, No. 16 C 5400, 2017 WL 3478814, at *7 (N.D. Ill. Aug. 13, 2017) (Kennelly, J.).

Mr. Alexopoulos's other contentions also lack merit. First, there is no exemption or other rules that permits a judgment debtor to transfer assets for "necessary living expenses," assuming that's what these transfers (or some of them) were. The exemptions permitted by Illinois law are those specified under 735 ILCS 5/2-1402, which does not include an exemption for ordinary living expenses. *See Cannell v. First State Bank of Bloomington*, No. 13-CV-3226, 2014 WL 3725929, at *3 (C.D. Ill. July 28, 2014); *City of Chicago v. Air Auto Leasing, Inc.*, 297 Ill. App. 3d 873, 879, 697 N.E.2d 788, 791 (1998) ("There is no statutory exception for transfers made 'in the ordinary course of business' . . . ."). The bottom line is that a judgment debtor who has been served with a citation does not have the option of choosing which debts to prioritize over the judgment, beyond any exemptions established by state law.

Second, the fact that one of the accounts was a joint account with Mr. Alexopoulos's spouse is of no consequence. He is presumed to own the funds in a joint account, and he has not rebutted the presumption. *See, e.g., Gataric v. Colak*, 2016 IL App (1st) 151281, ¶ 17.

Finally, it is likewise of no consequence that some of the transfers were made from the Sportsman Resource Training account before the bank holding that account

7

was served with a citation. As NHC contends, the relevant citation is the one served upon Mr. Alexopoulos himself, which he received before any of the transfers in question were made. Mr. Alexopoulos admitted under oath that he is the sole member and the manager of Sportsman, which is a limited liability company. The funds retained by Sportsman therefore were owed to and would have been payable to him. He cannot avoid the lien imposed by the citation served upon him by causing Sportsman to transfer the funds before they came to him.

For these reasons, the Court grants NHC's motion. Mr. Alexopoulos knowingly transferred funds in violation of the lien imposed by the citation that had been served upon him. This constituted contempt of court, and the Court so finds. As a remedial sanction for the contempt, Mr. Alexopoulos is directed to pay to NHC $138,449.75, in monthly installments of $10,000 each. The first such payment will be due by no later than July 30, 2024, and each monthly payment will be due by no later than the 30th of each month thereafter. Starting in August 2024, Mr. Alexopoulos will also be required to file with the Court on the 10th of each month (or the next business day after the 10th, if that falls on a weekend or holiday), an accounting under penalty of perjury listing his monthly income and expenditures (including any payments on the judgment and on this installment order), as well as his assets at current market value. This is so that the Court can monitor his compliance with the contempt sanction and to enable the Court to adjust the amount if appropriate.

The Court also extends the citations served upon Mr. Alexopoulos and the banks where he has account for another approximately six months, through January 31, 2025. This is appropriate given his violations of the main citation's restraining provision.

**4.     Motion for turnover order (3) as to Peter Alexopoulos (dkt. 438 ff.)**

In this motion, NHC asks for an order directing Mr. Alexopoulos to turn over possession of two vehicles—a 2018 Chevrolet Suburban and a 2022 Forest River Inc. trailer—and any firearms he possesses. Mr. Alexopoulos has responded to the motion.

In his response, Mr. Alexopoulos contends that any turnover is premature before the Court has adjudicated his asserted exemptions under the relevant Illinois statutes. That's not quite what the statute he cites says: it says that no payment order may be entered under 735 ILCS 5/2-1402(c) unless "the judgment debtor *has had an opportunity to assert exemptions,* and the payments are from non-exempt sources." 735 ILCS 5/2-1402(c-5). Mr. Alexopoulos *has* had the opportunity to assert exemptions; he made a filing to this effect (*see* dkt. 298 at 6-8); and he was directed to assert his exemptions at the citation examination held in November 2023 (*see* dkt. 301). The Court is entitled to assume that Mr. Alexopoulos complied with the Court's order. In any event, to the Court's recollection, Mr. Alexopoulos—who has the burden of asserting any exemptions—did not seek any further ruling by the Court and did not interpose any objection when the Court later entered an order in December 2023 including this language: "Defendants' motion to claim exemptions [298] is terminated as a still-pending motion based on earlier rulings and orders entered by the Court." *See* dkt. 321. Among other things, his status report filed about a month later breathed not a word of anything relating to a need to adjudicate his exemptions.

All of that aside, when Mr. Alexopoulos claimed his exemptions in dkt. 298, he asserted his statutory exemption for "$2,400 in value in any one vehicle" with regard to the 2018 Suburban and represented that given the amount he owes on that vehicle, this

covers the entire value.  He further stated that if it doesn't, then he asserts whatever amount of his $4,000 wildcard exemption would be needed to cover the remaining value.  On the Suburban, then, the ball appears to be in NHC's court, on whether it agrees or disagrees that the $2,400 covers the entire value of the vehicle.  If NHC disputes this, it should be prepared to so advise the Court at the July 15 hearing, and the Court will determine then how to bring the matter to a conclusion.

As for the trailer and the firearms, Mr. Alexopoulos made a general assertion in his November 2023 filing that he "asserts the balance of his wild card exemption to any/all remaining items of personal property to the fullest extent permitted . . . ." Dkt. 298 at 7.  But although Mr. Alexopoulos, as the owner of the trailer and firearms, is in the best position to say what their value is, has told the Court nothing about that.  He or his counsel should come to the July 15 hearing prepared to tell the Court his claimed value of each of these items and produce at that hearing any evidence necessary to establish those points.  The Court will determine how to proceed after hearing from Mr. Alexopoulos.

As far as how any non-exempt property gets delivered and disposed of, another topic addressed in Mr. Alexopoulos's response to the motion, the parties should be prepared to discuss this on July 15 as well.

**5.       Motion to compel turnover as to Spiro Tsaparas (dkt. 439 ff.)**

In this motion, filed on June 21, 2024, NHC seeks turnover of three vehicles—a 2017 Ducati, a 1991 Lancia, and a 2015 GMC Yukon Denali—and any firearms in Mr. Tsaparas's possession.  His response makes the same arguments as Mr. Alexopoulos just discussed by the Court with regard to "adjudicating" his asserted exemptions.  With

10

respect to Mr. Tsaparas's statutory exemptions, his earlier filing (dkt. 298) asserted his $2,400 motor vehicle exemption on a BMW—not one of the vehicles sought in NHC's current motion—and asserted $1,000 of his wildcard exemption on the same BMW and the remaining $3,000 on certain jewelry. Thus the items sought by the current motion for turnover order are not the subject of any exemption claims by Mr. Tsaparas. As a result, there is nothing the Court has to adjudicate at this time regarding those exemptions.

The property in question is, in fact, subject to turnover, and the Court therefore grants NHC's motion. The parties should come to court on July 15 prepared to discussed how the vehicles and firearms get delivered and disposed of.

**6.      Motion for rule to show cause as to Spiro Tsaparas (dkt. 437 ff.)**

In this motion, NHC seeks an order to show cause against Mr. Tsaparas regarding why he should not be held in contempt for further transfers of assets—totaling around $71,000—that he made after the Court had already held him contempt for earlier transfers (as discussed above). It appears to the Court that these transfers ran afoul of the citations, not to mention the Court's earlier order.

In response, Mr. Tsaparas contends that there is no "clear and unambiguous command" that precluded him from making the transfers. That doesn't make any sense. The citation served on Mr. Tsaparas included this language:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the judgment debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the

11

amount of the judgment.

Dkt. 243 at 2.  In the absence of some further explanation by Mr. Tsaparas regarding what the Court is missing on this—which is not forthcoming in his response to NHC's motion—his contention is overruled.

Mr. Tsaparas appears to contend that because the Court had not yet determined the appropriate sanction for his earlier contempt(s), i.e. the amount of the installment payments for the monies he had previously dissipated, there was no clear and unambiguous rejection of his ability to make the payments in question.  That borders on the ridiculous.  *The Court long ago held Mr. Tsaparas in contempt for making these transfers*; all that was still under advisement was the specific sanction.  This is akin to an argument that because a thief hasn't yet been required to pay restitution for an earlier theft, he's free to keep stealing because it's not clear how much he will have to pay back and when.  Nonsense.

Mr. Tsaparas's remaining arguments involve the nature of the remedial sanction, and whether NHC is seeking civil or criminal contempt.  To be clear, the Court understands NHC to be asking the Court to hold Mr. Tsaparas in civil contempt.  NHC should be prepared to advise the Court on July 15 if it has this wrong.  Discussion of remedies is premature, as all the Court has been asked to do at this point is to issue an order to show cause.

The Court grants NHC's motion for an order to show cause for the reasons discussed.  NHC is directed to submit a draft order to Judge Kennelly's proposed order e-mail address at some point before the July 15 hearing.  The parties are to be prepared to discuss on July 15 the nature and timing of any further proceedings.

## Conclusion

The motions bearing docket numbers 338, 351, 408, 420, and 437 have been ruled upon and are therefore terminated as pending motions.

Date:  July 12, 2024
(corrected July 15, 2024)

_____
MATTHEW F. KENNELLY
United States District Judge