```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3
     NHC LLC,                          )  Docket No. 19 C 6332
 4                                     )
                        Plaintiff,     )
 5                                     )
                vs.                    )
 6                                     )
     CENTAUR CONSTRUCTION COMPANY INC.,)  Chicago, Illinois
 7   et al.,                           )  September 18, 2024
                                       )  8:39 o'clock a.m.
 8                       Defendants.   )

 9              TRIAL TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE MATTHEW F. KENNELLY
10

11   APPEARANCES:

12
     For the Plaintiff:     VEDDER PRICE P.C.
13                          BY:  MR. ZACHARY J. WATTERS
                            222 North LaSalle Street, Suite 2600
14                          Chicago, IL 60601
                            (312) 609-7500
15

16                          DAVIS MCGRATH LLC
                            BY:  MS. GINI S. MARZIANI
17                          125 South Wacker Drive, Suite 300
                            Chicago, IL 60606
18                          (312) 332-3033

19

20

21

22

23   Court Reporter:        MS. CAROLYN R. COX, RPR, CRR, FCRR
                            Official Court Reporter
24                          219 S. Dearborn Street, Suite 2102
                            Chicago, Illinois  60604
25                          (312) 435-5639
```

1    APPEARANCES CONTINUED:

2

3    For Defendant          SMITHAMUNDSEN LLC
     Peter Alexopoulos:     BY:  MR. CONSTANTINE GAVRILOS
                            150 North Michigan Ave, Suite 3300
4                           Chicago, IL 60601
                            (312) 894-3329
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (The following proceedings were had telephonically:)

2  THE CLERK:  Case 19 C 6332, NHC v. Centaur

3  Construction.

4  THE COURT:  Good morning.  It's Judge Kennelly.  Can

5  plaintiff's counsel please give your name for the record.

6  MR. WATTERS:  Good morning, your Honor.  Zach Watters

7  of Vedder Price on behalf of plaintiff, NHC LLC.

8  MS. MARZIANI:  And Gini Marziani on behalf of NHC

9  LLC.

10  THE COURT:  Counsel for the defendants and I think

11  some of the respondents on the citations.

12  MR. GAVRILOS:  Good morning, your Honor.  Constantine

13  Gavrilos on behalf of defendants and some of the citation

14  respondents.

15  THE COURT:  Anybody else on the phone for the NHC

16  case?

17  Okay.  I'm just going to kind of work my way through

18  the status report.

19  I know that based on what you've told me that I have

20  to decide the motion to quash regarding the citation to the

21  law firm.  I know that there's the more recent rule to show

22  cause on Mr. Tsaparas.  I'm not prepared to decide those

23  today, but I'll do those promptly.

24  On the personal property of Mr. Tsaparas, it looked

25  like the only open issue had to do with the turnover of

1   Mr. Tsaparas' firearms.  And if that hasn't been done yet,
2   what I'm going to do is set a deadline.
3           So has it happened yet, Mr. Gavrilos?
4           MR. GAVRILOS:  It has not, your Honor.
5           THE COURT:  Okay.  So the deadline is going to be a
6   week from Friday.  So that's the -- what is that?  That's
7   the 27th.
8           So the order is going to say that the deadline for
9   Mr. Tsaparas to turn over his firearms to the designated
10  dealer is the 27th of September.
11          Sorry.  What did you want to say?
12          MR. GAVRILOS:  I just wanted to -- you said -- you
13  mentioned that it was the only issue with Mr. Tsaparas.  You
14  know, we have been exchanging some correspondence concerning
15  the turnover of his motorcycle --
16          THE COURT:  There's this thing about the
17  repossession, and the plaintiff was looking for some
18  documentation.  That's the -- no, that's not the -- no, I'm
19  sorry --
20          MR. GAVRILOS:  That's the Denali.
21          THE COURT:  Yeah, I'm sorry.  I get these vehicles
22  confused.
23          Go ahead.
24          That's the Ducati?
25          MR. GAVRILOS:  That's the Ducati, your Honor.  The

1  status is, you know, as of yesterday or the day before,

2  counsel for NHC indicated that there was a dealer who had an

3  offer.  The dealership is located approximately three and a

4  half hours away from Mr. Tsaparas' residence.

5      We sent an email also yesterday requesting that, you

6  know, some other arrangement be made aside from Mr. Tsaparas,

7  you know, transporting his motorcycle three and a half hours

8  away, whether it's a courier or some other dealer close by.

9      We're not objecting to the turnover of the

10  motorcycle, just the logistics.  It is extremely burdensome.

11  You know, turning over the motorcycle likely will require some

12  sort of, you know, tow or transportation vehicle, something

13  along those lines.

14      So I just wanted to raise that issue with respect to

15  Mr. Tsaparas' personal property, as -- as far as I'm

16  concerned, the only other issue aside from the firearm.

17      THE COURT:  Okay.  Does plaintiff's counsel want to

18  say anything about that?

19      MR. WATTERS:  Yes, your Honor.  This is attorney Zack

20  Watters.  Counsel's correct.  We received his email.

21      I understood from counsel's email that he was

22  concerned about the timing of Mr. Tsaparas turning over the

23  motorcycle, but based on his last comment, it sounds like he's

24  saying Mr. Tsaparas can't turn over the motorcycle just

25  because of logistical concerns.

1  So we're happy to --

2  THE COURT:  I think what he's saying -- let me cut

3  through this.  What he's saying is he doesn't want to drive it

4  three and a half hours away.

5  So here's the deal.  I get these status reports, and

6  it's like there's no issue too small for you to dispute, okay?

7  So here's the deal.  Turnover means you show up at

8  his front door and take it.  So getting it to the dealer,

9  and -- getting it to the dealer is on you.  So figure it out.

10  MR. WATTERS:  Understood, your Honor.

11  THE COURT:  Next.  On the -- so I've got a deadline

12  for the firearms.  Mr. Alexopoulos' Suburban is still kind of

13  under advisement.  There's this issue on the trailer.

14  So, no, nobody talks until I -- I know somebody tried

15  to butt in there.  Don't.

16  On the trailer, there's -- I guess Mr. Alexopoulos is

17  asserting an exemption called tools of the trade under the

18  relevant statute that's limited to $1500.

19  So there's a line in the plaintiff's part of the

20  status report that says, "To the extent the Court is inclined

21  to permit this exception to -- exemption to apply."

22  So what would be the reason why I wouldn't permit it

23  to apply?

24  MR. WATTERS:  Your Honor, this is attorney Zack

25  Watters.  The exemption wasn't raised until well after the

1    turnover order was entered.

2         We also don't believe it actually applies --

3         THE COURT:  What about that?  I mean, I -- you know,

4    I think it probably is.  I mean, it's the trailer that he

5    hauls his stuff around in.  I think that probably counts.

6         Mr. Gavrilos, so the argument seems to be that it

7    wasn't asserted in a timely fashion because I already ordered

8    the turnover before you asserted it.

9         What about that?

10        MR. GAVRILOS:  Well, your Honor, I mean, the case law

11   on timeliness of something being raised is -- is --

12   essentially leaves a lot up to the Court's discretion, and we

13   would contend that I think the first time we raised this was

14   in a status report maybe in March or April of this year.

15        I will say, you know, it may help that plaintiff's

16   counsel has represented they have an offer above and beyond

17   what the exemption is, so this may all be a moot point.  We

18   just asked for that documentation.  You know, if they have

19   something that says that the value is greater than $1500, we

20   would just like to review that.  And if it's sound and there's

21   no basis to dispute it, then we'll accept it.

22        THE COURT:  Okay.  What was the filing in March where

23   you say you asserted the exemption?

24        MR. GAVRILOS:  Your Honor, if you give me a second, I

25   can go through the status reports and figure out --

1      THE COURT:  It looks like there's a status -- there's

2  a March 15th status report.  Would it have been in a status

3  report?

4      MR. GAVRILOS:  I believe so, your Honor.

5      THE COURT:  All right.  I've got it up here.  It's

6  long.  Just a second.

7      Yeah, it's a 24-page status report.  I'm not going to

8  look for it.

9      So this is what you need to do.  Get figured out

10  whether there's a viable basis to say the thing is worth more

11  than 1500 bucks and then kind of take it from there, address

12  it in the next status report.

13      Now I got to go back to the current status reports.

14  Give me a second.  There it is.

15      Sorry.  It will just take two seconds for it to come

16  up here.

17      There we go.

18      Okay.  Now I'm on section D of the plaintiff's part.

19  It says, "Mr. Tsaparas' employer is not the one who garnished

20  wages from July 7th through August 17th or since August 31st."

21      So there's no request in there for me to do anything.

22      So the ball is in your court, I guess, on the

23  plaintiff's side.

24      Now we're on the section about the third-party

25  citation.

1    So there's two of them that are referenced in here:

2  One with somebody named Susan Krasick, K-R-A-S-I-C-K; and one

3  to -- I think it's maybe a law firm regarding Mr. Pokorny.

4    So I honestly question whether -- it sounds like

5  there's something you're asking me to do.  I guess I have to

6  say I question whether on a third-party citation it's enough

7  to put something in the status report if you're asking me to

8  compel something.  I think you're going to need to file a

9  motion, as much as I hate to invite more filings in this case.

10    I think that the opposing-party citation respondent,

11  in other words, is entitled to some notice before I just start

12  entering orders on it.

13    So the ball is in plaintiff's court on that one too.

14    Next is section F:  Village Bank & Trust account.

15  That's one where there's a pending citation.  Mr. Alexopoulos

16  has represented that there's a balance of 10,000 and change.

17  NHC requests a turnover order.

18    So is there a basis, Mr. Gavrilos, not to do that?

19    MR. GAVRILOS:  Well, your Honor, I guess I hesitate

20  to raise this basis, but it's been Mr. Alexopoulos' position,

21  I guess, going back several months now that the income that

22  has been deposited to that account is the balance of his

23  paycheck that has not been garnished and under

24  Section 1402(b)(5) is one of the enumerated exemptions.  In

25  other words, this is part of his income that is not subject to

1 further application to judgment by statute.

2       So that would be basis to not turn that money over.

3       THE COURT: Okay. All right. You've made your

4 record.

5       That's an issue I dealt with multiple times in the

6 case. I disagree.

7       So the request for a turnover order is granted. Get

8 me a draft order in Word format to my proposed order email

9 address, and I'll enter it.

10       Okay. Then there's -- let's see.

11       So the only other thing in the status report that

12 looks like it's a contested issue is a request for an

13 accounting.

14       So, Mr. Gavrilos, you're the guy who routinely cites

15 to me not just sections but subsections, paragraphs, and

16 subparagraphs of the citation statute.

17       Is that something you're entitled to under the

18 statute; an accounting to make sure that --

19       MR. GAVRILOS: Your Honor --

20       THE COURT: -- plaintiff isn't taking the money and

21 going and spending it on, you know, a fancy dinner?

22       MR. GAVRILOS: No, your Honor. It wasn't relying on

23 any specific section of the statute. It's just because, for

24 instance, you know, when plaintiff raises in the status report

25 that certain garnishments aren't making it to the plaintiff,

1  you know, that is not a type of turnover mechanism that runs

2  through the defendants or third-party respondents.  And so it

3  occurred to me that, you know, I think it makes sense to track

4  those payments and who they come from and just keep a running

5  tally as we go.

6          You know, I understand counsel's position that the

7  judgment is so large that it doesn't really make sense to keep

8  track of it, but I just don't think that that's good practice.

9  I think that we need to be keeping track of exactly the money

10 that's turned over from the defendants, the third-party

11 respondents, the way that it has been turned over, and just

12 kind of keep this as we go.

13         And --

14         THE COURT:  You're telling me that -- you're telling

15 me that Mr. Tsaparas -- you're telling me that Mr. Tsaparas is

16 not getting notification from whoever pays his wages of the

17 amount that's being withheld on the garnishment?

18         MR. GAVRILOS:  Well, your Honor, it's a little bit

19 different than when that garnishment was originally entered

20 because as you recall now, I guess the entire balance of

21 Mr. Tsaparas' income is going to the IRS, so I guess it all

22 shows up as zero for him.

23         THE COURT:  Yeah, but you're telling me the

24 employer --

25         MR. GAVRILOS:  And I just want to --

1    THE COURT:  Stop.

2    You're telling me that the employer isn't telling him

3    where the salary that he would otherwise be getting is going?

4    That's what you're telling me?

5    MR. GAVRILOS:  That's my understanding, your Honor.

6    I mean, the paychecks that go to Mr. Tsaparas are after the

7    deduction has been made.

8    THE COURT:  Yeah, just like my paycheck is after the

9    deduction for withholding to the IRS, withholding to the State

10   of Illinois, and withholding for whatever else is made.  I get

11   something that tells me all those things are withheld and the

12   balance that I'm getting is X.

13   You're telling me he's not getting that?  It seems a

14   little surprising.

15   MR. GAVRILOS:  Yeah, I'm just going based off of the

16   last series of pay stubs that we submitted.  I mean, it was

17   not reflected on there.

18   THE COURT:  Okay.

19   MR. GAVRILOS:  And I will say, your Honor, counsel --

20   THE COURT:  Let me -- stop.  I got -- stop.  I got 12

21   jurors sitting out there.  This isn't a free-form discussion.

22   So can you give me a sense at this point on the

23   plaintiff's side about ballpark how much total has been

24   collected on the judgment?

25   MR. WATTERS:  Yes, your Honor.  We provided a number

1    to counsel prior to the --

2            THE COURT:  Just tell me -- answer my -- I don't

3    need -- stop, stop, stop, stop.  I just asked a question.  I

4    don't need you to tell me, you know, all of the background.

5            Just how much?

6            MR. WATTERS:  $69,799.98, your Honor.

7            THE COURT:  Okay.  So my suggestion would be that you

8    include in the status reports kind of an update on how much

9    has been collected.

10           I get that, you know, we're talking about what

11   amounts to, given the size of the judgment, nickels and dimes,

12   but I don't think there's really any downside, and I'm sure

13   somebody's keeping track of that on the plaintiff's side.

14           So I'll get the two fully briefed matters ruled on.

15           I'm going to set this out another six weeks for

16   another status hearing.

17           So six weeks from now is the 31st of October at 8:55

18   by phone, and I'd like a status report a week before that,

19   which is the 24th of October.

20           And on any motion that you file with regard to these

21   respondents, just file them whenever you're going to file

22   them, and I'll set a deadline for a response and a hearing

23   date.

24           MR. GAVRILOS:  Okay.  Your Honor, you said 8:55

25   on 10/31?

1          THE COURT:  Correct.

2          MR. GAVRILOS:  Thank you, Judge.

3          THE COURT:  Thanks.

4          MR. WATTERS:  Thank you, your Honor.

5     (Which were all the proceedings had in the above-entitled

6  cause on the day and date aforesaid.)

7     I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
8

9  _____          _____
   Carolyn R. Cox                          Date
   Official Court Reporter
10 Northern District of Illinois
   /s/Carolyn R. Cox, RPR, CRR, FCRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25