IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NHC LLC, a Florida limited liability
company,

       Plaintiff,

v.

CENTAUR CONSTRUCTION COMPANY
INC., an Illinois corporation, SPIRO
TSAPARAS, and PETER ALEXOPOULOS,

       Defendants.

No. 19-cv-06332

Honorable Matthew F. Kennelly

## PLAINTIFF/JUDGMENT CREDITOR'S MOTION FOR RULE TO SHOW CAUSE AS TO WHY SPIRO TSAPARAS SHOULD NOT BE HELD IN CONTEMPT

Daniel P. Jackson, Bar No. 6289813
Zachary J. Watters, Bar No. 6310675
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312)609 7500
djackson@vedderprice.com
zwatters@vedderprice.com

Gini S. Marziani, Bar No. 3127421
Davis McGrath LLC
125 S. Wacker Drive
Chicago, Illinois 60606
(312)332-3033
gsmarziani@davismcgrath.com

Plaintiff/judgment creditor, NHC LLC ("NHC" or "Judgment Creditor"), by its undersigned counsel and pursuant to Fed. R. Civ. P. 69, 735 ILCS 5/2-1402, and the Court's inherent authority, respectfully moves this Court to issue a rule to show cause as to why defendant/judgement debtor Spiro Tsaparas ("Tsaparas") should not be held in contempt of court for violating, *inter alia*, the citation to discover assets, the Court's April 23, 2024 oral ruling and the Court's July 2024 contempt order. In support hereof, NHC states as follows:

## RELEVANT FACTS AND PROCEDURAL BACKGROUND

**I.      Tsaparas *Routinely* Violates The Tsaparas Citation's Clear Restraining Provision**

1. After a jury trial, judgment was entered against defendants Centaur Construction Co., Tsaparas, and Peter Alexopoulos jointly and severally in the total amount of $22,272,124.34 for fraud and breach of contract plus punitive damages against the defendants individually and in particular Tsaparas in the amount of $1,500,000.00 ("Judgment"). (Dkt. No. 228.)

2. On or about May 5, 2023, NHC served a citation to discover assets on Spiro Tsaparas ("Tsaparas Citation"). (Dkt. No. 243.)

3. The Tsaparas Citation contained the following standard restraining language contained in citation forms:

> YOU ARE PROHIBITED from **making or allowing any transfer** or other disposition of, or interfering with, any property **not exempt** from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled or which may be acquired by or become due to the judgment debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the judgment debtor, until further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

(*See* the Tsaparas Citation) (emphasis added).

1

4. In the several months since NHC served the Tsaparas Citation, Tsaparas made a partial production of responsive documents. Many of these documents were produced only after the Court granted NHC's various motions to compel. (*See* Dkt. Nos. 295, 337.)

5. Although Tsaparas's production was then incomplete, on March 5, 2024, NHC filed a motion for turnover order as to Spiro Tsaparas and US Bank Accounts (the "Tsaparas Turnover Motion"). (Dkt. No. 351.) The Tsaparas Turnover Motion outlined a multitude of instances in which Tsaparas had violated the restraining provision of the Tsaparas Citation. (*Id*. at ¶¶ 16, 18.)

6. On April 23, 2024, following briefing and a hearing on the Tsaparas Turnover Motion, the Court issued an oral ruling[1] on the Tsaparas Turnover Motion and found that "Tsaparas made numerous transfers in violation of the citation and the lien imposed by the citation. The total of those is in the neighborhood of $400,000." (Ex. 1, at 5:3-6.) The Court further found that Tsaparas had "committed contempt of court about three dozen times" by systematically violating the Tsaparas Citation and the restraining provision imposed by the Tsaparas Citation. (*Id*. at 8:1-2.)

7. On April 14, 2024, NHC served a citation to discover assets on Deanna Van Senus ("Van Senus Citation") (Dkt No. 431.) Deanna Van Senus ("Van Senus") is purportedly Tsaparas's personal assistant. On April 16, 2024, NHC served a citation to discover assets on Dee VS, LLC ("Dee VS Citation"). (Dkt No. 387.) Dee VS, LLC is a business entity owned and operated by Van Senus. The Van Senus Citation and the Dee VS Citation commanded the production of documents on or before May 10, 2024. However, both Van Senus and Dee VS failed to timely produce documents.

---

[1] A true and correct copy of the transcript of the April 23, 2024 hearing in this matter is attached hereto as **Exhibit 1**.

2

8. After additional demands, on June 10, 2024, Van Senus eventually produced some documents in response to the Van Senus Citation and/or the Dee VS Citation.[2] Based on a review of that partial production,[3] NHC learned that Tsaparas had continued to violate the lien of the Tsaparas Citation and this Court's April 23, 2024 ruling by transferring funds to Van Senus. Specifically, on or after the Court's April 23, 2024 ruling, Tsaparas made the following transfers to Van Senus and/or Dee VS:

| Date | Description | Amount |
|---|---|---|
| April 23, 2024 | Zelle Payment from Spyridon Tsaparas | $3,500 |
| May 3, 2024 | Zelle Payment from Spyridon Tsaparas | $3,500 |
| May 17, 2024 | Fedwire Credit via US Bank, Spyridon Tsaparas | $9,192 |
| May 31, 2024 | Zelle Payment from Spyridon Tsaparas | $3,500 |
| TOTAL | | $19,692 |

(*See* Group Ex. 2.)[4]

9. On June 20, 2024, NHC received records from U.S. Bank related, in part, to Tsaparas's account ending in -8753.[5] A preliminary review of these documents confirmed that Tsaparas had systematically violated the lien of the Tsaparas Citation and this Court's April 23,

---

[2] After additional back and forth, counsel for Van Senus and/or Dee VS has promised to make another production the week of February 10, 2025.
[3] True and correct copies of JPMorgan Chase Bank, N.A. account statements for Dee VS, LLC for the time period March 30, 2024 through May 31, 2024 are attached hereto as **Group Exhibit 2**. These documents were produced by Van Senus and have been redacted to omit certain confidential information.
[4] The belated document production by Van Senus includes numerous additional transfers made by Tsaparas to Van Senus and/or Dee VS prior to the Court's April 23, 2024 ruling which violate the lien of the Tsaparas Citation. By way of example, in March 2024, Tsaparas transferred approximately $13,346.00 to Van Senus and/or Dee VS. Tsaparas's history of violating the lien of the Tsaparas Citation is well documented.
[5] A true and correct copy of U.S. Bank account statements for Tsaparas' account ending in -8753 for the time period April 12, 2024 through June 13, 2024 is attached as **Group Exhibit 3**. These documents were produced by U.S. Bank and have been redacted to omit certain confidential information.

3

2024 ruling by dissipating assets. During the then most recent two month period Tsaparas deposited approximately $71,473.78. (Group Ex. 3.) However, instead of retaining those assets or using them to pay the Judgment, Tsaparas dissipated all of those funds during that two-month period in order to fund his lavish lifestyle at the expense of NHC. While each and every one of those transfers was itself a violation of the restraining provision of the Tsaparas Citation and this Court's April 23, 2024 ruling, some of the more notable transfers included the following:

| Date | Description | Amount |
|---|---|---|
| April 24, 2024 | Wire transfer to Amundson Davis[6] | $4,000 |
| May 3, 2024 | Cash withdrawal | $9,500 |
| May 21, 2024 | Visa purchase at the Westin | $365 |
| May 23, 2024 | Visa purchase at SIXT.COM (car leasing website) | $1,172.11 |
| May 31, 2024 | Cash withdrawal | $2,000 |
| June 3, 2024 | Zelle payment to Dee VS[7] | $2,846 |
| June 7, 2024 | Visa purchase at the Marriott | $466.26 |
| June 10, 2024 | Cash withdrawal | $2,800 |
| June 11, 2024 | Cash withdrawal | $2,000 |
| **TOTAL** | | **$25,149.37** |

---

[6] Notably, the $4,000 transfer to Amundson Davis was made by Tsaparas, and accepted by Amundson Davis, just *one day* after the Court explicitly found that Tsaparas "committed contempt of court about three dozen times" by transferring his assets in violation of the Tsaparas Citation and the lien imposed by the Tsaparas Citation.

[7] The U.S. Bank account statement also confirms the May 17, 2024 and May 31, 2024 transfers to Dee VS. (Group Ex. 3, at 6.)

4

(Group Ex. 3.) Over the course of that two-month period and while under court order to not dissipate assets Tsaparas spent another **$72,252.24,** of which more than $44,800 went to car leases, hotels, payments to his purported personal assistant, payments to his attorneys, and cash.

10. Accordingly, on June 21, 2024, NHC filed another motion for rule to show cause as to why Tsaparas should not be held in Contempt (the "June 2024 Tsaparas Contempt Motion") (Dkt. 437) based on these additional wrongful actions.

11. Thereafter, on July 12, 2024, this Court entered its "Order Regarding Certain Post-Judgment Matters" (the "July 2024 Contempt Order"). (Dkt. 459.) The July 2024 Contempt Order noted that the Court had "found Spiro Tsaparas in contempt due to his repeated and extensive violations of the restraining provisions of the citation to discover assets that was served upon him." (July 2024 Contempt Order.) Moreover, the Court ordered Tsaparas starting in August 2024 to "file with the Court on the 10th of each month. . . an accounting under penalty of perjury listing his monthly income and expenditures." (*Id.* at 3.) Additionally, the Court granted the June 2024 Tsaparas Contempt Motion.

12. At the next court date (July 15, 2024), the Court ordered Tsaparas "to show cause in writing by 8/5/2024 why he should not be held in contempt for the transfer of approximately $71000 as detailed in [the June 2024 Tsaparas Contempt Motion]." (Dkt. 461.)

13. *Tsaparas has never responded as ordered by the Court.* The Court has never sanctioned Tsaparas for the violative transfers detailed in the June 2024 Tsaparas Contempt Motion.

**II.   New Evidence Of Tsaparas Violating The Tsaparas Citation's Restraining Provision**

14. Incredibly, and based on NHC's review of US Bank records only recently received on or about February 6, 2025 (the "Recent US Bank Records," a partially-redacted copy of which

5

is attached hereto as **Group Exhibit 4**),[8] *Tsaparas has continued to brazenly violate the clear restraining provision contained in the Tsaparas Citation* and disregard numerous court orders related to his previously adjudicated instances of contempt. Moreover, these latest transfers (detailed below) demonstrate that Tsaparas may have again[9] committed perjury.

15. While each and every one of those transfers identified in the Recent US Bank Records are evidence of separate violations of the restraining provision of the Tsaparas Citation (and related Court orders), some of the more notable transfers include the following:

| Date | Description | Amount |
|---|---|---|
| June 14, 2024 | Cash withdrawal | $8,100 |
| June 20, 2024 | Cash withdrawal | $1,700 |
| July 1, 2024 | Cash withdrawal | $3,600 |
| July 3, 2024 | Cash withdrawal | $2,000 |
| July 8, 2024 | Cash withdrawal | $700 |
| July 12, 2024 | Cash withdrawal | $7,000 |
| July 25, 2024 | Cash withdrawal | $400 |
| August 21, 2024 | Cash withdrawal | $10,281 |

---

[8] Notably, Judgment Debtors did not produce these documents and have refused to produce any additional documents, seeking instead (at every step) to obstruct, obfuscate and delay. NHC was forced to obtain these documents directly from US Bank in spite of inconvertible fact that Tsaparas has these records within his possession, custody and/or control. This and other refusals to provide documents and/or information have accounted for delay(s) herein.

[9] By way of example, Tsaparas' August 2, 2024 "Disclosure of Legal Fees" (the "First Tsaparas Legal Fee Declaration") (**Exhibit 5**) contained a myriad of false statements. Knowing he would be subject to cross-examination regarding that declaration at an evidentiary hearing on January 9, 2025, Tsaparas submitted a "Revised Disclosure of Legal Fees" (the "Second Tsaparas Legal Fee Declaration") (**Exhibit 6**) the day before the hearing. As exposed through cross-examination at the evidentiary hearing, several false statements remained in Second Tsaparas Legal Fee Declaration. Yet another glaring example is the May 10, 2024 declaration Tsparas signed on behalf of defendant/judgment debtor Centaur Construction Company, Inc. (the "May 2024 Tsaparas Centaur Declaration") (**Exhibit 7**). The misstatements raised and obfuscation furthered by that declaration as addressed in greater detail in a separate filing.

| | | |
|---|---|---|
| August 26, 2024 | Cash withdrawal | $100 |
| September 30, 2024 | Cash withdrawal | $123.50 |
| December 3, 2024 | Cash withdrawal | $1,390.00 |
| December 5, 2024 | Cash withdrawal | $200 |
| December 20, 2024 | Cash withdrawal | $160 |
| December 24, 2024 | Cash withdrawal | $43.50 |
| December 27, 2024 | Cash withdrawal | $163.50 |
| **TOTAL** | | **$35,961.50** |

(Group Ex. 4.) Once again, and while under court order(s) to not dissipate assets, Tsaparas withdrew no less than **$35,961.50** in cash. *The very day this Court entered the July 2024 Contempt Order Tsaparas withdrew $7,000 in cash*. History tells us this is not mere coincidence.

**III. Tsaparas Routinely Disregards And Intentionally Subverts His Accounting Obligations Contained In The July 2024 Contempt Order**

16. In its July 2024 Contempt Order, the Court ordered Tsaparas to make monthly installment payments of $25,000, starting on July 30, 2024. (Dkt. No. 460, at 3.) Additionally, the Court ordered Tsaparas "to file with the Court . . . an accounting *under penalty of perjury* listing his monthly income and expenditures (including any payments on the judgment and on this installment order), as well as his assets at current market value" (the "Monthly Accounting") (*Id* (emphasis added).)

17. Tsaparas' first Monthly Accounting and list of assets were due to be filed on August 10, 2024 and to detail expenditures and assets for the previous 30 days. Tsaparas failed to file anything, which resulted in yet another motion for rule to show cause. (Dkt. No. 481.) This Court ordered Tsaparas to show cause why he should not be held in contempt for his failure to adhere to

7

that deadline. (Dkt. No. 482.) In his response (Dkt. No. 492), Tsaparas belatedly attached his "Disclosure of Monthly Expenses" (**Exhibit 8**) (the "Aug. 23, 2024 Declaration"), but *still* neglected to include the required statement of assets.

18. Curiously (and without explanation), Tsaparas selected the seemingly arbitrary date of July 16, 2024 (as opposed to July 11, 2024—a month prior to August 10, 2024) to begin his recitation of monthly expenses. *Now we know why*. It was not until NHC received and reviewed the Recent US Bank Records that it became apparent why Tsaparas and counsel selected that arbitrary date—to conceal Tsaparas's withdrawal of $7,000 the very same day this Court entered the July 2024 Contempt Order. The Aug. 23, 2024 Declaration also states that that "at present, I have available to me a total balance of $193.27, which is currently held in US Bank Account #8753." The declaration makes no mention of Tsaparas withdrawing and/or spending the $7,000 he withdrew on July 12, 2024. The Aug. 23, 2024 Declaration and the circumstances surrounding it are/were deceitful and may constitute a fraud on the Court.

19. On August 30, 2024 the Court gave Tsaparas yet another chance to comply and ordered that he produce his statement of assets on or before September 3, 2024. Tsaparas filed another declaration (the "September 3, 2024 Declaration"), a copy of which is attached hereto as **Exhibit 9**. In the September 3, 2024 Declaration, sworn under penalty of perjury, Tsaparas swore he had "not acquired any additional assets or personal property valued at over $500 since November 13, 2023." Again, Tsaparas makes no mention of the $7,000 he withdrew on July 12, 2024.

20. Tsaparas's second Monthly Accounting and list of assets was due to be filed on September 10, 2024. Once again, Tsaparas *failed to file anything* which resulted in yet another motion for rule to show cause. (Dkt. 504.) The Court granted that rule and ordered Tsaparas to

8

show cause why he should not be held in contempt for his failure to obey the Court's July 2024 Contempt Order. (Dkt. 505.) A show cause hearing was scheduled for September 30, 2024. (*Id*.) On September 26, 2024, Tsaparas, filed his "Second Financial Disclosures and Motion to Extinguish Show Cause Order." (Dkt. 506.) Included within that filing was Tsaparas' "Disclosure of Monthly Expenses" dated September 26, 2024—but no "Statement of Assets" as required. It appears Tsaparas simply resubmitted his September 3, 2024 Declaration. (Ex. 9.)

21. As with the $7,000 withdrawal noted above, it was not until NHC recently received and reviewed the Recent US Bank Records that it became apparent why Tsaparas played another round of games with his second disclosures—*Tsaparas deposited/exchanged $10,281 in foreign currency on August 21, 2024*. (Group Ex. 4.) Tsaparas makes no mention of withdrawing and/or spending the $10,281 he withdrew in either his Aug. 23, 2024 Declaration or his September 3, 2024 Declaration.

22. On December 2, 2204, Tsaparas filed another financial disclosure. (Dkt. 535.) The *very next day*, on December 3, 2024, Tsaparas deposited/exchanged $1,606.61 in foreign currency through his US Bank Account ending in -5753. (*See* Group Ex. 4.) On December 10, 2024 Tsaparas filed a "revised" financial disclosure. (Dkt. 538.) That disclosures states, under penalty of perjury, "since my last submission I have not acquired any personal property valued as greater than $500." Nowhere is the $1,606.61 mentioned.

23. In short summary, NHC believes both the timing and content of the Tsaparas court-ordered monthly submissions are an intentional mess, designed to obfuscate Tsaparas' continued instances of contempt and further conceal his surreptitious use of cash.

**IV.  NHC Believes That Spiro Is In Possession Of Large Sums Of Cash And/Or Is Spending Cash In Violation Of The Tsaparas Citation's Restraining Provision And Numerous Court Orders**

24. At the September 30, 2024 show cause hearing, the Court indicated that if NHC thought there was "something in the knipple[10] out there . . . then tell [the Court] to tell them [the Debtors] to disclose it, and we'll figure it out." (Ex. 10 at 21:20, 25; 22:1.)

25. As set forth in greater detail in NHC's separately filed motion with respect to the Tsaparas and counsel's misstatements concerning Centaur's cessation of operations and purported lack of records after 2019 (Dkt. No. 590), between February 16, 2021 and February 24, 2023, Centaur/Tsaparas withdrew no less than $1,271,157.38 *in cash* from Centaur's various bank accounts (that NHC is aware of). (**Exhibit 11**.) Since May 5, 2023, Spiro has individually withdrawn no less than $142,320.15 *in cash*. (**Exhibit 12**.) No records have been provided regarding what, if anything, was done with that cash.

## LEGAL STANDARD

26. "Courts independently must be vested with power to impose . . . submission to their lawful mandates . . . ." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotations omitted). One of the most important powers exercised by a court is the power to punish contempt of a Court order. *Autotech Tech. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007). A court is vested with broad discretion to enforce its decrees in a contempt proceeding and fashion contempt remedies, the purpose of which is to secure compliance with prior court orders. *F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009).

---

[10] The Court went on to define a "knipple" as Yiddish term denoting a "little box that you hid under the floor that has the cash in it." A true and accurate copy of that portion of the September 30, 2024 hearing is attached as **Exhibit 10**.

10

27. Fed. R. Civ. P. 69. incorporates into federal law state post-judgment enforcement procedures. The incorporated state procedures in this district are Section 2-1402 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1402) and Illinois Supreme Court Rule 277, the state statutes and rules governing supplementary procedures. Thus, included within Fed. R. Civ. P. 69 is the Court's authority to enter orders in these supplemental citation proceedings to discover assets to apply to the Judgment. *See GE Betz, Inc. v. Zee Co.*, 718 F.3d 615 (7th Cir. 2013). As set forth in 735 ILCS 5/2-1402(f)(1), a "court may punish any party who violates the restraining provision of a citation as and for a contempt." 735 ILCS 5/2-1402(f)(1). Similarly, Illinois Supreme Court Rule 277(h) provides as follows: "**Sanctions**. Any person who fails to obey a citation, subpoena, or order or other direction of the court issued pursuant to any provision of this rule may be punished for contempt."[11]

## ARGUMENT

### V. THIS COURT SHOULD ISSUE A RULE TO SHOW CAUSE AGAINST TSAPARAS

If not already clear based on the lengthy history of this case, it is now beyond reasonable dispute that Tsaparas has no regard for his obligations as imposed by the Tsaparas Citation and no respect for this Court's orders. This Court has already made multiple attempts to ensure compliance with its orders, only a small sampling of which are detailed herein.[12]

*First*, on April 23, 2024,[13] the Court found and stated that Tsaparas "made numerous transfers in violation of the citation and the lien imposed by the citation. The total of those is in

---

[11] NHC hereby provides the attached Declaration of Zachary J. Watters (included at the end of this Motion) which complies with the obligations of L.R. 37.1(a).

[12] The Court need only review the docket in this case for a complete history of Tsaparas' many instances of contemptuous behavior.

[13] A true and correct copy of a portion of the transcript of the April 23, 2024 hearing in this matter is attached hereto as **Exhibit 11**.

11

the neighborhood of $400,000." (Ex. 11, at 5:3-6.) The Court further found that Tsaparas had "committed contempt of court about three dozen times" by systematically violating the lien imposed by the Citation to Discover Assets served on Tsaparas. (*Id*. at 8:1-2). Despite this public finding of contempt, Tsaparas continued to dissipate his assets. (*See* Dkt. No. 437, ¶¶ 10-11.) Incredibly, the *very next day* Tsaparas initiated a $4,000 transfer to his attorneys at Amundsen Davis.

*Second*, on July 12, 2024, the Court ordered Tsaparas to pay $25,000 monthly installments starting on July 30, 2024, as a sanction for his earlier contempt. (Dkt. No. 459, at 3.) That *very same day*, Tsaparas withdrew $7,000 in cash that has never been accounted for or turned over to NHC. Tsaparas failed to make his first monthly installment payment. In fact, Tsaparas has never paid a single penny toward the court-ordered monthly installments—despite living in a multimillion-dollar mansion and routinely jet-setting around the globe. Worse yet, Tsaparas has submitted false information to this Court and timed his delayed filings in a way to obfuscate his continued possession and/or use of cash. In short, Mr. Tsaparas has made it clear that public findings of contempt and monetary sanctions are not effective. He consistently ignores them. More is needed to compel compliance.

### VI. THIS COURT SHOULD MAKE A FINDING THAT TSAPARAS HAS COMMITTED PERJURY AND MAKE A CRIMINAL REFERRAL

"Perjury in the criminal context consists of false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Malibu Media, LLC v. Tashiro*, 2015 WL 2371597, at *27 (S.D. Ind. May 18, 2015). When considering the imposition of sanctions for perjury in civil cases, courts consider the criminal context definition and its three elements: (1) false testimony; (2) materiality; and (3) willful intent. *Id.* "False testimony" requires a false statement made "under oath or affirmation"

and given "at trial or in an affidavit or deposition." *Id.* (quoting *Zeigler Coal Co. v. Dir.,Off. of Workers' Comp. Progs.,* 326 F.3d 894, 901 n.7 (7th Cir. 2003)). The Seventh Circuit has found referral to a United States Attorney's Office appropriate based on a litigant's flouting of his duty to be honest with the court.[14]

As detailed herein (and *inter alia*, in NHC's separately filed motion regarding Centaur's alleged cessation and lack of records beyond 2019 (Dkt. No. 590)), Tsaparas has given false testimony of a material nature and with willful intent. NHC's investigation is ongoing and Judgment Debtors have obstructed the truth-seeking process of ongoing citation proceedings at every step. Referral to the United States Attorney's Office is appropriate.

### VII. THIS COURT SHOULD ORDER TSAPARAS TO PROVIDE A DETAILED ACCOUNTING OF CASH TRANSACTIONS

A Court can order a judgment debtor to provide an accounting of "all cash he has received or . . . possessed," and may also make the judgment debtor liable for the costs the judgment creditor incurred in bringing a motion for an accounting. *W. Bend Mut. Ins. Co. v. Belmont State Corp.*, 2010 WL 5419061, at *13 (N.D. Ill. Dec. 23, 2010), *aff'd*, 712 F.3d 1030 (7th Cir. 2013); *cf. Resol. Tr. Corp. v. Ruggiero,* 994 F.2d 1221, 1224 (7th Cir. 1993) (discussing district court's granting of an accounting in connection with 1402 citation proceedings)*; cf. Shales v. Lanas Const., Inc.*, 2010 WL 3842362, at *2 (N.D. Ill. Sept. 24, 2010) (Kennelly, J.)  In its July 2024 Contempt Order, this Court already ordered Tsaparas to submit "an accounting under penalty of perjury listing monthly income and expenditures," yet NHC has never seen details on how the cash was spent. As such,

---

[14] *Neal v. LaRiva*, 765 F.3d 788, 791 (7th Cir. 2014); *accord Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 722 (7th Cir. 2008) ("[B]ecause it appears that Negrete may have committed perjury, we refer this opinion to the United States Attorney."); *cf. Arma Yates, LLC v. Arma Care Ctr., LLC*, 2018 WL 2193141, *4 (N.D. Ill. May 14, 2018) (ordering the clerk of the court to send copies of its opinion and the case file to the United States Attorney and making findings about various cash and personal property transfers).

13

either the cash has NOT been spent, or it has been spent and associated sworn declarations (containing little or no information on cash expenditures) have been false.

As noted above, Tsaparas (whether individually or in connection with his role as CEO of Centaur) has taken out massive sums of cash during the period leading up the Judgment—and in the period after entry of Judgment when strictly forbidden from doing so. Tsaparas is either sitting on a very large "knipple," or he has covertly transferred this cash in an attempt to circumvent his payment obligations to NHC. Either way, NHC is entitled to know what happened so that it might pursue any and all remedies.

**VIII. THIS COURT SHOULD ORDER TSAPARAS TO IMMEDIATELY TURN OVER ALL CASH WITHDRAWN SINCE SERVICE OF THE TSAPARAS CITATION OR SHOW CAUSE WHY SUCH IS NOT POSSIBLE**

Once a judgment creditor discovers assets in the hands of the judgment debtor and/or a third party, a court may order the judgment debtor or third party to deliver those assets to the judgment creditor to satisfy the judgment. 735 ILCS 5/2-1402(a); *Ericksen v. Rush Presbyterian St. Luke's Med. Ctr.*, 682 N.E.2d 79, 84 (1st Dist. 1999). 735 ILCS 5/2–1402 is "construed liberally" and vests courts with "broad powers to compel the application of discovered assets or income to satisfy a judgment." *Broaddus v. Shields*, 2012 WL 1144664, at *2 (N.D. Ill. Apr. 5, 2012) (internal quotations omitted). It follows that a court may "'summarily compel the application of discovered assets to satisfy a judgment.'" *Joseph Stephens & Co. v. Cikanek*, 588 F. Supp. 2d 870, 872 (N.D. Ill. 2008) (quoting *Society of Lloyd's v. Est. of McMurray*, 274 F.3d 1133, 1135 (7th Cir. 2001)).

Tsaparas has unquestionably withdrawn large sums of cash and not provided evidence that those funds have been spent. Accordingly, NHC is under the assumption that Tsaparas still has access to that cash. This Court should order Tsaparas to immediately turn over those funds to NHC in partial satisfaction of the Judgment.

WHEREFORE, and given Tsaparas's recalcitration and for the above and foregoing reasons, NHC LLC respectfully requests that this Court (i) find Tsaparas in civil contempt of Court, (ii) issue a bench warrant for the arrest of Tsaparas and jail Tsaparas for a sufficient time in order to ensure compliance with this Court's orders and the Tsaparas Citation,[15] (iii) order Tsaparas to pay to NHC the additional amounts detailed herein he dissipated in violation of Tsaparas Citation, (iv) forbid Tsaparas from using cash moving forward, unless he obtains and produces legitimate receipts for each *permitted* transaction, (v) order Tsaparas to pay the balance of the Judgment in monthly installments in the amount of at least $25,000.00 (without prejudice to NHC's right to continue to locate and/or recover any assets available to satisfy the judgment), (vi) award NHC its reasonable attorneys' fees in preparing and arguing this motion, (vii) immediately freeze the Tsaparas' Account ending in 8753 and @Tsaparas Venmo accounts, (viii) extend the Tsaparas Citation, (ix) order Tsasaparas to provide a full and accurate accounting of all cash transactions for himself and/or Centaur, (x) order Tsaparas to turn over all cash withdrawn in violation of the Tsaparas Citation since service of the Tsaparas Citation, and (xi) grant NHC such other, further, or additional relief in its favor and against Tsaparas as this Court deems fair, just and equitable.

---

[15] When a court finds that a party has not complied with an order, the court may employ both coercive and compensatory sanctions. *See United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947). A court has significant discretion to determine an appropriate sanction to coerce compliance with its order, though the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id*. at 304. A court has the inherent power "to coerce obedience to its orders by summarily holding a recalcitrant person . . . in civil contempt and then imprisoning him until he complied." *In re Crededio*, 759 F.2d 589, 590 (7th Cir. 1985) (quotation omitted).

Dated:  February 14, 2025	Respectfully submitted,

                                      NHC LLC


                                      By:  /s/ *Zachary J. Watters*
                                                    One of Its Attorneys

Daniel P. Jackson, Bar No. 6289813
Zachary J. Watters, Bar No. 6310675
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312)609-7500

Gini S. Marziani 3127421
Davis McGrath LLC
125 S. Wacker Drive
Chicago, Illinois 60606
(312) 332-3033
gsmarziani@davismcgrath.com

16

**DECLARATION OF ZACHARY J. WATTERS**

Zachary J. Watters, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury under the laws of the United States of America that: (i) he is one of the attorneys for Plaintiff/Judgment Creditor in the pending lawsuit styled as *NHC LLC v. Centaur Constr. Co., et al.* (N.D. Ill. Case No.19 C 6332) (the "Lawsuit"); (ii) he has read the foregoing *PLAINTIFF/JUDGMENT CREDITOR'S MOTION FOR RULE TO SHOW CAUSE AS TO WHY SPIRO TSAPARAS SHOULD NOT BE HELD IN CONTEMPT* being filed in the Lawsuit simultaneously with this Verification and knows the contents thereof; (iii) the statements set forth therein are true and correct to the best of his knowledge, information, and belief; and (iv) the sources of his information and the grounds of his knowledge, information, and belief are his personal involvement in the Lawsuit and his review of relevant documents and files concerning the Lawsuit, including those documents attached as exhibits to the motion.

Executed on February 14, 2025

/s/ Zachary J. Watters
Zachary J. Watters

17

## CERTIFICATE OF SERVICE

I hereby certify that, on February 14, 2025, a true and correct copy of the foregoing **PLAINTIFF/JUDGMENT CREDITOR'S MOTION FOR RULE TO SHOW CAUSE AS TO WHY SPIRO TSAPARAS SHOULD NOT BE HELD IN CONTEMPT** was electronically filed with the Clerk of the Court using the Court's CM/ECF system and thereby served electronically by the CM/ECF system on all counsel of record.

                                                                                             */s/ Zachary J. Watters*
                                                                                            An Attorney for NHC LLC