**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NHC LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 6332** |
| | ) | |
| **CENTAUR CONSTRUCTION CO.,** | ) | |
| **SPIRO TSAPARAS, and PETER** | ) | |
| **ALEXOPOULOS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

NHC LLC obtained a judgment against Centaur Construction Co., Inc., Spiro Tsaparas, and Peter Alexopoulos. To attempt to collect the judgment, NHC has served numerous citations to discover assets under 735 ILCS 5/2-1402. As relevant to the present motion, NHC served Mr. Tsaparas and two third parties with citations: M Development (Mr. Tsaparas's employer) and Amundsen Davis, LLC (the defendants' legal counsel). NHC has moved for a turnover and an accounting of certain funds transferred to Amundsen Davis, alleging violations of these citations. NHC has also moved for an injunction precluding Amundsen Davis from accepting non-exempt assets belonging to the judgment debtors.

For the following reasons, the Court grants NHC's motion to turn over funds directly transferred from Mr. Tsaparas to Amundsen Davis, but denies NHC's motion to turn over funds transferred from M Development to Amundsen Davis. The Court further

grants NHC's motion to enjoin Amundsen Davis from accepting non-exempt assets of the judgment debtors.  Finally, the Court denies NHC's motion for an accounting.

## Background

NHC LLC obtained a judgment of over $22 million against an entity, Centaur Construction Co., Inc., and its principals, Spiro Tsaparas and Peter Alexopoulos.  The judgment is on appeal.  The defendants, however, did not post a bond and did not obtain a stay pending appeal.  As a result, NHC has proceeded with collection-related activity before this Court.  This largely has involved the service of citations to discover assets as well as extensive discovery to attempt to find assets of the defendants.

Three citations are relevant to this motion.  On May 12, 2023, NHC served Mr. Tsaparas with a citation to discover assets.  Then, on August 11, 2023, NHC served M Development—Mr. Tsaparas's employer—with a citation.  Lastly, on April 3, 2024, NHC served Amundsen Davis—Mr. Tsaparas's legal counsel—with a citation.  All of the citations contained the following restraining language:

> YOU ARE PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the debtor or to which the debtor may be entitled or which may be acquired by or become due to the judgment debtor and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to the judgment debtor, until further order of court or termination of the proceedings.  You are not required to withhold the payment of any money beyond double the amount of the judgment.

Pl./J. Creditor's Mot. at 4.

On May 24, 2024, the Court ordered Mr. Tsaparas to disclose certain information regarding payments to his legal counsel.  In response, Mr. Tsaparas disclosed that the following payments, along with others not relevant here, were made to Amundsen Davis

for legal fees related to this matter:

1.  Centaur Construction paid $100,000 on June 21, 2023.

2.  M Development paid $100,000 on February 26, 2024.

3.  Mr. Tsaparas paid $4,000 on April 24, 2024.

4.  M Development paid $118,417.42 on June 18, 2024.

Mr. Tsaparas further stated that "[a]ll payments were made at [his] direction." Tsaparas

Disclosure (dkt. no. 526) at 1–2.

On November 15, 2024, NHC moved to require Amundsen Davis to turn over the

transferred funds listed above and to account for all funds transferred to Amundsen

Davis on behalf of the judgment debtors. NHC argued that Mr. Tsaparas, Centaur

Construction, and M Development violated their respective citations by transferring

assets allegedly belonging to Mr. Tsaparas to his legal counsel. The Court held an

evidentiary hearing pertaining to this motion on January 8, 2025, largely to determine

Mr. Tsaparas's role in M Development's payments. On the day of the hearing, Mr.

Tsaparas filed a revised disclosure, declaring that the $100,000 payment initially

attributed to Centaur Construction actually originated from M Development. This left at

issue two transferors and their respective transfers: $4,000 transferred by Mr. Tsaparas

and $318,417.42 by M Development.

During the hearing, Mr. Tsaparas expounded on the conversations that led Mark

Hunt, an owner of M Development and Mr. Tsaparas's supervisor, to pay for his legal

fees:

> So my conversation with Mark would be, "Mark, I've accumulated another
> hundred grand, man, in legal fees. This case is going and it's dragging. I
> don't know what's going on. I need to pay them because they're going to
> drop me." . . . [T]here have been eight or ten conversations like that. And

3

> Mark will say, "[O]kay, all right." And then a day or two or five later, I'll say "I want to connect you to [Amundsen Davis] so you can take care of it" . . . and then there will be one or two follow-ups and then the payment will go out and Mark will say "all right" or I'll receive a letter or a communication from my attorneys saying we received payment.

Tr. of Proceedings, Jan. 8, 2025 at 92. Mr. Tsaparas testified that he lacked any authority to require M Development to pay his legal fees. When questioned about his previous statement that the payments were made at his "direction," Mr. Tsaparas clarified: "Perhaps we understand the word 'direction' differently. I did direct, I did command, I did not have authority. I did ask by giving direction to please help me with my legal fees so I can continue to have representation here and Mr. Hunt did." *Id.* at 39.

### Discussion

Rule 69 of the Federal Rules of Civil Procedure requires proceedings to execute a money judgment "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Accordingly, the Court proceeds under Illinois law.

"In Illinois, 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277 govern supplementary proceedings." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1111 (N.D. Ill. 2012). Citations to discover assets are one such proceeding, in which a judgment creditor serves a citation "to discover the assets of a judgment debtor or third party and apply those assets to satisfy the judgment." *Gibbons v. Kowal*, 2024 IL App (1st) 232124, ¶ 27, --- N.E.3d ---; 735 ILCS 5/2-1402. A citation may contain a "restraining provision," prohibiting a party from transferring, disposing, or interfering with "any property not exempt from the enforcement of a judgment . . . belonging to the judgment debtor" as well as property the judgment debtor "may be entitled to." 735 ILCS 5/2-1402(f)(1).

A.    **Tsaparas's transfer**

It is undisputed that NHC served Mr. Tsaparas with a citation to discover assets, which restrained his ability to transfer assets, before he transferred $4,000 to Amundsen Davis.  In fact, just a day before the transfer at issue, the Court found that Mr. Tsaparas had made "numerous transfers in violation of the citation."  Tr. of Proceedings, April 23, 2024 at 5.

Mr. Tsaparas nonetheless argues that the payment at issue was exempt from the citation as it was "derived from" wages.  Resp. in Opposition to Mot. at 7.  "The debtor bears the burden of demonstrating that property is exempt from being applied to satisfy a judgment."  *Wells Fargo Bank Minn., NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 13, 22 N.E.2d 125, 129.  Illinois law recognizes one such exemption for certain wages.  *See* 735 ILCS 5/2-1402(b)(3).

Yet, as the Court has repeatedly explained to Mr. Tsaparas and his counsel, the applicable wage deduction statute defines "wages" as "any . . . compensation *owed by* an employer to a judgment debtor."  735 ILCS 5/12-801 (emphasis added); *see NHC LLC v. Centaur Constr. Co.*, No. 19 C 6332, 2024 WL 3398332, at *3 (N.D. Ill. July 12, 2024) (Kennelly, J.).  "Once wages are paid, they are no longer owed and thus cease to be wages."  *NHC LLC*, 2024 WL 3398332, at *3 (citing *PrivateBank & Tr. Co. v. Gatto*, 2018 IL App (2) 170396-U, ¶¶ 18–21).  The fact that the funds at issue "derived from" wages is immaterial.  *Gatto*, 2018 IL App (2d) 170396-U, ¶ 20 ("An insolvent person may not accumulate and shelter funds in a bank account simply because they derive from wages." (quoting *In re Thum*, 329 B.R. 848, 855 (Bankr. C.D. Ill. 2005))).

Mr. Tsaparas attempts to get around Illinois law and this Court's prior rulings by

arguing that "the Court appeared to acknowledge . . . Mr. Tsparas['s] income exemption during the parties' August 7, 2024 hearing." Resp. in Opposition to Mot. at 8. But during that hearing, the Court and the parties specifically discussed exemptions relating to a BMW vehicle and jewelry, not the wage exemption. And frankly, the Court is at a loss regarding how Mr. Tsaparas could have possibly thought his motion to exempt wages was granted when the Court has repeatedly held otherwise. *See, e.g.*, Tr. of Proceedings, April 23, 2024 at 5 ("[T]he wage deduction statute . . . only appl[ies] to wages that are unpaid and . . . once a judgment debtor receives income including wages and deposits into an account, it's subject to turnover."); *NHC LLC*, 2024 WL 3398332, at *3 (noting, when again rejecting Mr. Tsaparas's wage exemption claim, that "[t]he Court previously overruled an identical argument made by Mr. Tsaparas in a similar context").

NHC further argues that the Court may order Amundsen Davis to turn over these funds based on Mr. Tsaparas's violation of his citation to discover assets. A citation upon the judgment debtor grants the judgment creditor an enforceable lien "upon all personal property belonging to the judgment debtor in possession or control of the judgment debtor." 735 ILCS 5/2-1402(m)(1). To enforce this lien against a third party post-transfer, a court may enter a judgment against any third party found to have violated "the restraining provision of a citation" "in the amount of the value of the property transferred." *Id.* 5/2-1402(f)(1). At least one other court in this district has found it proper to order legal counsel to turn over fees that it "should have been aware" were in the "control" of a judgment debtor subject to a citation. *See City of Chicago v. Spielman*, No. 09 C 6948, 2021 WL 11716277, at *3 (N.D. Ill. Sept. 30, 2021).

6

There is no doubt that Amundsen Davis should have been, and was, aware that Mr. Tsaparas was under a restraining citation and that these funds were his property. Amundsen Davis has been Mr. Tsaparas's counsel throughout these proceedings, was on notice of this Court's repeated denial of Mr. Tsaparas's wage-exemption claim, and in particular represented Mr. Tsaparas during a hearing in which the Court found he violated his citation through the transfer of funds. Amundsen Davis does not challenge the Court's power to order such a turnover, nor does it offer any reason (beyond its rejected exempt-funds argument) not to do so. The Court finds that Mr. Tsaparas's $4,000 transfer to Amundsen Davis ran afoul of his citation to discover assets and orders Amundsen Davis to turn over those funds to NHC.

## B.    M Development's transfer

M Development is not a judgment debtor. Illinois law, however, allows a judgment creditor to serve a citation to a third party "to discover assets belonging to the judgment debtor that the third party may have in its possession." *Door Properties, LLC v. Nahlawi*, 2020 IL App (1st) 173163, ¶ 26, 188 N.E.3d 806, 811 (citation omitted). "Before a judgment may proceed against a third party who is not the judgment debtor, the record must contain some evidence that the third party possesses assets of the judgment debtor." *Gibbons*, 2024 IL App (1st) 232124, ¶ 27. The judgment creditor has the burden of showing that "the third-party respondent possesses assets of the judgment debtor." *Nahlawi*, 2020 IL App (1st) 173163, ¶ 31, 188 N.E.3d at 812.

"What constitutes an 'asset belonging to the judgment debtor' is to be liberally construed." *Id.* ¶ 26, 188 N.E.3d at 811. For example, Illinois law considers "a debt owed to [a] judgment debtor" to be the judgment debtor's asset. *Id.* ¶ 27; 188 N.E.3d at

811 (citing Ill. S. Ct. R. 227(a)).

Two cases guide the Court's determination regarding whether M Development's payments are assets belonging to a judgment debtor. In *National Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, 83 N.E.3d 44, the Illinois Appellate Court found a loan to the judgment debtor to be the debtor's asset. The judgment debtor had entered into a loan agreement with a third-party lender who was subject to a citation to discover assets. *Id.* ¶¶ 6–9, 83 N.E.3d at 47–48. The lender then disbursed the loan proceeds to a construction escrow agent on behalf of the judgment debtor. *Id.* ¶ 9, 83 N.E.3d at 48. The judgment creditor argued that the lender violated its citation when it transferred the loan proceeds to the third party. *Id.* ¶ 10, 83 N.E.3d at 48–49. The appellate court concluded that the loan proceeds were property "belonging to the judgment debtor." *Id.* ¶ 35, 83 N.E.3d at 55. Although the court acknowledged that the judgment debtor never received the loan proceeds directly, his signature on both the loan agreement and the disbursement authorization evidenced "control over the loan proceeds." *Id.* ¶ 36, 83 N.E.3d at 55–56.

Not all payments made on behalf of a judgment debtor "belong" to the debtor, however. In *Door Properties, LLC v. Nahlawi*, a judgment debtor had its legal fees paid by a third-party entity subject to a citation to discover assets. *Nahlawi*, 2020 IL App (1st) 173163, ¶ 6, 188 N.E.3d at 808. The entity, which was owned by the debtor's parents and friends, argued that the payments were gratuitous and thus were not the judgment debtor's property. *Id.* ¶¶ 10, 19, 188 N.E.3d at 808–10. The appellate court agreed that gratuitous payments are not a judgment debtor's assets. *Id.* ¶ 46, 188 N.E.3d at 814. Specifically, a gratuitous payment on behalf of a judgment debtor

could not belong to the debtor, as the debtor lacked any legal claim to the payment. *Id.* ¶ 48, 188 N.E.3d at 815 ("Our holding is just another way of reiterating the long-standing principle that, in a citation proceeding, a judgment creditor . . . may not recover from a third-party citation respondent unless the judgment debtor could have recovered from the third-party respondent." (cleaned up)).

From these cases, it is apparent that third-party assets transferred on behalf of a judgment debtor belong to a debtor only when the debtor has some control over the assets. The loan in *Scarlato* was an asset of the judgment debtor, as the debtor evidenced control over the loan proceeds through his signature on the loan agreement and authorization. *Scarlato*, 2017 IL App (1st) 161943, ¶ 36, 83 N.E.3d at 55–56. The gratuitous payments in *Nahlawi*, however, was not the judgment debtor's assets, as the debtor—unable to make any legal claim to the payments—lacked control over the payments even when made on the debtor's behalf. *Nahlawi*, 2020 IL App (1st) 173163, ¶ 48, 188 N.E.3d at 815; *see also Gibbons*, 2024 IL App (1st) 232124, ¶ 29 (concluding that a third party's payment of a judgment debtor's bail was not an asset belonging to the judgment debtor, as there was "no indication that [the judgment debtor] could have used the [funds] for his own purposes" or that the debtor "had 'control' over those funds," distinguishing *Scarlato*).

NHC has not carried its burden to establish that M Development's payments were assets belonging to Mr. Tsaparas, as NHC has not shown he had control over the payments. In both an affidavit and during the evidentiary hearing, Mr. Tsaparas testified that he lacks control over M Development's payment processes. *See* Aff. of Spiro Tsaparas ("I do not control or possess any express or implied authority with respect to

the disposition of funds of M Development."); Tr. of Proceedings, Jan. 8, 2025 at 38–39 ("I do not have the authority to direct a payment. I can only ask my boss to make this payment and if he is willing to do so, he does.").

NHC's attempts to rebut this testimony fall short. First, NHC contends that Mr. Tsaparas must have control over M Development's payments, as he previously stated that "[a]ll payments" to Amundsen Davis "were made at [his] *direction*." Tsaparas Disclosure at 1 (emphasis added). NHC highlights that the word "direct" can mean "[t]o instruct (someone) with authority." Pl./J. Creditor's Reply at 8 n.8 (quoting *Direct*, Black's Law Dictionary 576 (12th ed. 2024)). According to NHC, this means that Mr. Tsaparas has already admitted to having control over the payments and should be judicially estopped from changing his testimony.

The word "direct," however, does not always indicate control. "Direct" can mean "to show or point out the way," and "direction" in particular can mean "guidance or supervision of action or conduct." *Direct*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/direct (last visited April 4, 2025); *Direction*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/direction (last visited April 4, 2025). Even NHC's chosen legal dictionary has three definitions of "direct" listed *before* its cited definition that do not require control. *See Direct*, Black's Law Dictionary 576 (12th ed. 2024) ("1. To aim (something or someone). 2. To cause (something or someone) to move on a particular course. 3. To guide (something or someone) . . . ."). As this discussion illustrates, an isolated dictionary definition of a singular term does not show Mr. Tsaparas had control of M Development's payments. *See United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012) (Posner, J.) ("Dictionary definitions are

10

acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings.").  At most, these definitions show that Mr. Tsaparas suggested or asked that payments be made on his behalf irrespective of any control over them.

Next, NHC cites promotional materials and YouTube videos in which Mr. Tsaparas is described as a "principal" and being "in charge" of M Development.  Like dictionary definitions, these terms, when taken out of context, may indicate control.  But they do little to persuade the Court that Mr. Tsaparas actually had control of the payments in question.  It is true that a presenter's self-serving boasting that Mr. Tsaparas, one of the presenter's panelists, is "in charge of execution of everything [M Development does]" indicates—if taken literally—that Mr. Tsaparas has control over M Development's funds.  *See* Pl./J. Creditor's Mot. at 13.  But the Court need not credit such literalism when the statement's context suggests it is hyperbole.  *Cf. Costello*, 666 F.3d at 1044 (noting that giving the "ordinary meaning" to words "does not direct interpreters to follow the literal or dictionary meaning of a word or phrase.  To the contrary, it demands careful attention to the nuances and specialized connotations that speakers of the relevant language attach to particular words and phrases in the context in which they are being used" (citation omitted)).

Finally, NHC argues that Mr. Tsaparas is obligated to pay back M Development through continued employment, making these payments "loans" over which he had control.  Yet NHC has not produced evidence that Mr. Tsaparas must continue working—or satisfy any other obligation—in exchange for M Development's already-made payments.  NHC does highlight Mr. Tsaparas's employment agreement, which

allows compensation through "Promissory Note Forgiveness." Employment Agreement ¶ 2.2. But there is nothing produced that connects the payments in question to this agreement. And although NHC attempts to analogize these payments to the loan in *Scarlato*, the judgment creditor in *Scarlato* provided stronger evidence that the judgment debtor was in control of the loan proceeds at issue, including the debtor's signature on both the relevant loan agreement and authorization to disburse those loans. *Scarlato*, 2017 IL App (1st) 161943, ¶ 36, 83 N.E.3d at 55–56; *see also Gibbons*, 2024 IL App (1st) 232124, ¶ 28 (noting that the appellate court in *Scarlato* "found [the judgment debtor's] signatures on the loan documents evidenced his control over the loan proceeds" (cleaned up)).

Nor does Mr. Tsaparas's testimony at the evidentiary hearing indicate that he is obligated to repay M Development on these alleged "loans." Mr. Tsaparas did testify that he "*feel[s]* an obligation" to continue to work for M Development based on these payments. Tr. of Proceedings, Jan. 8, 2025 at 94 (emphasis added). But he also testified that M Development has not asked him, let alone required him, to agree to work in exchange for the payments. *Id.* (stating that Mark Hunt, Mr. Tsaparas's supervisor at M Development, has stated only that "[w]e'll figure it out" when the topic of repayment comes up). A mere want to repay M Development, without an agreement or understanding requiring Mr. Tsaparas to do so, does not indicate that he incurred an obligation in exchange for control of payments.

As discussed above, it is the judgment creditor's burden to show that a third party transferred assets belonging to the judgment debtor. *See Nahlawi*, 2020 IL App (1st) 173163, ¶ 31, 188 N.E.3d at 812. NHC, the judgment creditor, has not carried this

burden in connection with the present motion.  The Court therefore overrules NHC's motion to require Amundsen Davis to turn over M Development's transferred funds.

## C.     Injunction

Next, NHC has moved to enjoin Amundsen Davis from accepting any non-exempt assets from the judgment debtors.  Under Illinois law, a court may "enjoin any person, whether or not a party to the citation proceeding," from transferring, disposing, or interfering with non-exempt assets of the judgment debtor.  735 ILCS 5/2-1402(f)(2).  In view of the judgment debtors' repeated violations of their citations via transfers and their—and, as counsel, Amundsen Davis's—repeated inappropriate reliance on a purported exemption to justify these transfers, the Court finds the requested injunction is warranted.  *See* Tr. of Proceedings, April 23, 2024 at 5 (finding that Mr. Tsaparas "made numerous transfers in violation of the citation" and that he "committed contempt of court about three dozen times").  The Court grants NHC's motion to enjoin Amundsen Davis from receiving non-exempt assets of the judgment debtors.

## D.     Accounting

Finally, NHC moves for "an accounting of all legal fees paid to Amundsen Davis by or on behalf of the Judgment Debtors from May 12, 2023 to the present."  Pl./J. Creditor's Mot. at 14.  Although Amundsen Davis did not specifically respond to this request, it does not appear to the Court that an accounting is necessary in light of Mr. Tsaparas's revised court-ordered disclosures of legal fee payments.  *See* Dkt. no. 561.  The Court therefore denies NHC's motion for accounting as unnecessary at this time.

## Conclusion

For the reasons stated above, the Court grants NHC's motion for turnover [dkt.

526] in part and denies it in part.  The Court directs Amundsen Davis to turn over to

NHC, within seven days of this order, the $4,000 transferred from Mr. Tsaparas to

Amundsen Davis, but otherwise denies NHC's motion.  The Court further grants NHC's

motion to enjoin Amundsen Davis from accepting any non-exempt assets from the

judgment debtors.  Lastly, the Court denies NHC's motion for accounting.  NHC is

directed to prepare a draft injunction order, which defendants and Amundsen Davis

should approve as to its form, and to provide a Word version to the undersigned judge's

proposed order e-mail address by April 14, 2025.

Date:  April 9, 2025

MATTHEW F. KENNELLY
United States District Judge