IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NHC LLC, a Florida limited liability company, | |
| Plaintiff, | |
| v. | No. 19-cv-06332 |
| CENTAUR CONSTRUCTION COMPANY INC., an Illinois corporation, SPIRO TSAPARAS, and PETER ALEXOPOULOS, | Honorable Matthew F. Kennelly |
| Defendants. | |

**PLAINTIFF/JUDGMENT CREDITOR'S MOTION
TO COMPEL EMAIL PRODUCTION
OR, ALTERNATIVELY, *IN CAMERA* INSPECTION**

Plaintiff/Judgment Creditor NHC LLC ("NHC"), by its undersigned counsel, hereby moves to compel production of emails in the possession, custody or control of defendants/judgment debtors Centaur Construction Company, Inc. ("Centaur") and/or Spiro Tsaparas ("Tsaparas") for which Tsaparas has waived the attorney-client privilege by sharing access to those emails to with third-party contractor Deanna Van Senus ("Van Senus").

**I.     BACKGROUND**

This Motion is NHC's latest effort to hold Centaur and Tsaparas to account for their failure to produce responsive, non-privileged documents in response to the citations and other requests that were issued after entry of judgment in this case. As the Court is aware, NHC currently has a pending motion against Centaur for failing to produce years of business records after falsely claiming that Centaur stopped doing business in 2019. (Dkt. No. 590.) NHC also has a pending motion against all judgment debtors in this case seeking to compel forensic imaging of their electronic devices to capture responsive documents and data that have not been produced. (Dkt.

1

No. 650.) Both of these motions are based on documents that have been produced to NHC by third parties, alerting NHC to the deficiencies in the judgment debtors' productions. This Motion follows that same trend.

Here, NHC seeks production, or at least *in camera* review, of purportedly privileged communications involving judgment debtors' counsel that were copied to, accessed by, and/or reviewed by third-party Van Senus. As discussed in the pending motion to compel forensic investigation, Van Senus is a former Centaur employee who later went to work as a personal assistant for Tsaparas, beginning in 2021. (Dkt. No. 650, p. 2.) Van Senus has produced hundreds of text messages that she exchanged with Tsaparas, demonstrating that she was intimately involved in his business dealings through 2025 and, most importantly for the purposes of this motion, had direct access to Tsaparas' entire email account for a period of years.

To be clear, Van Senus was *not* an employee of Centaur during this period. On August 23, 2022, Van Senus and Tsaparas documented their working relationship with an Independent Contractor Agreement. A true and correct copy is attached as **Exhibit A**. That agreement states "[n]othing in this Agreement shall indicate that the Contractor [Van Senus] is a partner, agent, or employee of the Client [Tsaparas]." Thus, Van Senus worked for Tsaparas as an independent contractor. The agreement also contains a backpay provision, acknowledging that Van Senus began working for Tsaparas before the agreement was signed.

The text messages that Van Senus has produced demonstrate that she had full access to Tsaparas' email account and helped him manage that account as early as November 2021. For example, on November 30, 2021, Van Senus texted Tsaparas to say "When you look at your emails today. [sic] Make sure to go through the ones in the AMP folder," indicating that Van Senus was

reviewing, handling, and organizing Tsaparas' email. *See* Group **Exhibit B**, containing representative samples of text messages between Van Senus and Tsaparas.

This level of access by third-party Van Senus went on for years. For example:

- On November 22, 2021, Van Senus texted Tsaparas to say "When you have a minute, I flagged an email that Mark just sent asking for your help re: main and monarch." *See* Exh. B.

- On December 4, 2021, Van Senus texted Tsaparas to say "Can I send an intro email between elynne and nina? Elynne is going to be in Aspen and would like to talk to her about the event."[1] *See* Exh. B.

- On December 7, 2021, Van Senus texted Tsaparas to say, "Have you start [sic] on emails? I'm printing everything assuming you are coming this weekend and organizing but I'll stop if you've tackled the flagged emails already." *See* Exh. B.

- On December 22, 2021, Tsaparas texted Van Senus to say, "Can you please look at emails from me to jeff [sic] Richman (and others) regarding the lease amendments for 300 Hyman. I would go back to 2020 Jan, Feb." *See* Exh. B.

- On February 4, 2022, Van Senus texted Tsaparas to say, "You have a lot of texts and emails to go through but nothing super pressing in your email." *See* Exh. B.

- On February 8, 2022, Tsaparas texted Van Senus to ask, "Can you please go through texts and emails from the last couple days and identify tasks and commitments I made?" *See* Exh. B.

- On November 18, 2022, Tsaparas texted Van Senus to ask, "Anything in the msourcing [sic] email? I cannot access it." *See* Exh. B.

- On January 23, 2023, Tsaparas texted Van Senus to say, "You will be able to find their info in emails that Jimmy has forwarded to me." *See* Exh. B.

- On April 16, 2024, Tsaparas texted Van Senus to say, "Also the emails and texts are overwhelming g [sic] and ridiculous." Van Senus responded, "I know. I try to intercept them before you see them." *See* Exh. B.

- On August 9, 2024, Tsaparas texted Van Senus to say, "I need the emails that I had exchanged with the officer that was handling the taxes for the payroll taxes that I had exchanged emails with. Can you please check? Tomorrow morning early is

---

[1] Not only did Van Senus have full access to Tsaparas' Centaur e-mail account and/or e-mails, she we often send e-mails from his e-mail address. For example, see Van Senus' text on February 8, 2022 stating "It's from me, aka your email." *See* Exh. B.

3

- fine." Van Senus responded, "Do you know roughly when you sent the email to the tax guy? I can't find it." *See* Exh. B.

- On November 27, 2024, Tsparas texted Van Senus to say, "It has not come through to me. I did not see." Van Senus responded, "They show up in your email on my end." *See* Exh. B.

Most notably for the purposes of this Motion, Van Senus' access, review, and handling of emails *included* emails from judgment debtors' counsel at Amundsen Davis LLC ("Amundsen Davis"). For example, on December 8, 2021, Van Senus texted Tsaparas to say, "Take a look at the email from Conor cannon [sic] at smith [sic] Amundsen." *See* Exh. B. Another example can be found on January 10, 2022 where Tsaparas asks Van Senus "[c]an you respond to Matt Horn." *See* Exh. B. On September 23, 2024, Van Senus texted Tsaparas that "Constantine responded to you this afternoon. Would like a call Wednesday or Thursday." *See* Exh. B. And then years later, as recently as January 27, 2025, Van Senus texted Tsaparas to say, "Constantine responded and asked to push call to tomorrow. Please take a look bc it's a longer email." *See* Exh. B. On information and belief, the "Constantine" referred to here is judgment debtors' counsel Constantine Gavrilos. For at the least the period of 2019 through 2022 (and likely beyond), Tsaparas continued to send and receive e-mails through his Centaurco.com e-mail address. A small sampling of these e-mails (obtained with FOIA requests and/or citations to third-parties) are attached hereto as **Exhibit C**. As such, NHC reasonably believes that the e-mails between Tsaparas/Centaur and Amundsen Davis would likewise be from that e-mail address during this same important time-period. That evidence, coupled with Amundsen Davis's misrepresentations about Centaur's alleged cessation of business in 2019,[2] is critical to NHC's ongoing investigation

---

[2] As detailed in other pending motions/rules, upon reviewing records made available by other sources, NHC's counsel recognized that Centaur's assertion(s) that it ceased operations in 2019 were false. In June 12, 2024, the parties met and conferred on this issue. During the meet and confer, Centaur's counsel reiterated the claim that Centaur ceased operations shortly after this litigation was filed in 2019 and, as a result, no financial or other responsive records for the

4

into, *inter alia*, alter-ego and/or successor liability claims against judgment debtors and affiliated/related entities and persons.

Upon recognizing that Tsaparas and Centaur had waived privilege by sharing attorney-client communications with a third party in this fashion, counsel for NHC reached out to judgment debtors' counsel to discuss this issue. NHC's counsel began with a call on April 24, 2025, leaving a voicemail with Gavrilos to discuss this and other issues. (Declaration of Bryan Clark, attached as **Exhibit F**, at ¶ 3). As has become their pattern, judgment debtors' counsel did not respond. *Id.* at ¶ 4. These efforts demonstrate that NHC's good faith efforts to meet and confer under Fed. R. Civ. P. 37 were ignored. *Id.* at ¶ 5. Accordingly, this Motion follows.

## II. LEGAL STANDARD

Fed. R. Civ. P. 69 ("Rule 69") incorporates into federal law state post-judgment enforcement procedures. The incorporated state procedures in this district are Section 2-1402 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1402) and Illinois Supreme Court Rule 277, the state statutes and rules governing supplementary procedures. Thus, included within Rule 69 is the Court's authority to compel the production of documents in these citation proceedings to

---

company existed after that date. NHC's counsel proceeded to send an email summarizing the meet and confer, which is attached as group **Exhibit D**. NHC's counsel noted that they had received numerous documents indicating that Centaur continued to operate long after 2019. NHC's counsel also sent an exemplar document demonstrating that Centaur was an operating business during that time. *See* Ex. C, attaching exemplar document. On July 2, 2024, Centaur's counsel, Constantine Gavrilos, sent an email to NHC's counsel following up on the meet and confer. A true and correct copy of that email is attached as **Exhibit E**. In that email, Gavrilos stated that the payments revealed in Centaur's bank statements after 2019 reflected payment of unpaid invoices incurred before 2019. Thus, he asserted that "the outgoing wires from Centaur's bank account (which occurred before the citations were issued) are not evidence of Centaur resuming or continuing construction activities, but are instances where Centaur attempted to pay off some of its prior debts." *Id.* Gavrilos reiterated Centaur's position that "there is nothing else to produce responsive to your above inquiry." *Id.* Countless hours and tens of thousands of dollars later, NHC has amassed a trove of evidence that these representations were/are false and were designed to mislead NHC and obstruct collection efforts.

5

discover assets to apply to the judgment. *See GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 628 (7th Cir. 2013). The scope of permissible discovery by the judgment creditor is extremely broad: "more than one appellate court has held that extensive searching for assets — even described as 'a "fishing expedition"' — is permissible." *Id.*

### III.  ARGUMENT

Applying the broad scope of relevancy under Rule 69, Centaur and Tsaparas should be compelled to produce any purportedly privileged communications with Amundsen Davis that were copied to, accessed by, and/or reviewed by Van Senus. While communications between a party and its lawyer are clearly covered by the attorney-client privilege, such privilege can be waived because "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000). Courts have found that such a waiver exists when privileged information is provided to, or copied to, an unrelated third party. *Id.*

Here, Van Senus is an unrelated third party. The Independent Contractor Agreement explicitly states that Van Senus is an independent contractor of Tsaparas. *See* Ex. A. The fact that Van Senus formerly worked for Centaur is irrelevant because she was allegedly not working for Centaur at the time of the emails at issue in this Motion, and her contract makes abundantly clear that she is not an employee of Tsaparas. Thus, any decision by Centaur, Tsaparas, and/or Amundsen Davis to make otherwise privileged emails available to her represents an intentional waiver of the attorney-client privilege.

Centaur and Tsaparas will undoubtedly argue that the Court should not find a waiver because Van Senus was acting as Tsaparas' personal assistant and therefore should have confidential access to his documents. But when the "assistant" is a third-party who is not an

6

employee of a party or an authorized agent of the party involved in the provision of legal advice, courts have found a waiver. For example, in *In re Royce Homes, LP*, 449 B.R. 709, 741 (S.D. Tex. Bnkr. 2011), the court held that an executive waived privilege when he hired two third parties to help him manage his emails and gave them full access to his emails. The court noted that the assistant was "hired to print, review, and sort all of his personal e-mails stored on the Debtor's computer in connection with" certain litigation, even though she had no legal training. *Id.* The court found that the party's "actions were overtly inconsistent with the confidentiality necessary to maintain the privileged nature of one's attorney-client communications." *Id.*

Similarly, in *Multiple Energy Technologies, LLC v. Under Armour, Inc.*, 2024 WL 4784112, *5 (W.D. Pa. Nov. 14, 2024), the court held that an executive's forwarding of documents to employees at a third-party company waived privilege because "(1) there was nothing in the record suggesting that the employees were 'agents' of [the executive] or were assisting him with providing legal advice to [the company]; and (2) the emails did not include an admonition to maintain confidentiality or instruct the employees what to do with the emails once the documents were printed." *See also Sports Rehab Consulting, LLC v. Vail Clinic, Inc.*, 2022 WL 17976702, *16 (D. Colo. Oct. 21, 2022), report and recommendation adopted sub nom. *Sports Rehab Consulting, LLC,* 2023 WL 2824300 (D. Colo. Mar. 13, 2023) (holding that "a client is not free to designate every conceivable person under the sun as their ministerial agent").

Here, the Independent Contractor Agreement explicitly states that Van Senus is ***not*** an agent of Tsaparas. Moreover, nothing in the agreement (or any other document produced in this case) suggests that Van Senus was admonished to maintain confidentiality or instructed on managing the attorney-client privilege. Van Senus has no legal training and is not, to NHC's knowledge, involved in providing legal advice to Centaur or Tsaparas in connection with this case.

7

Certainly she is not involved in assisting *counsel* with the defense of the case, such that she might fall in the exception for secretaries and support staff at law firms. *See Blanchard*, 192 F.R.D. at 236; *see also Multiple Energy Technologies*, 2024 WL 4784112 at *6 ("[T]he real question is: Was [the third party] [the executive's] agent for purposes of the attorney-client privilege?").

Centaur and Tsaparas might further argue that the communications that were accessed by Van Senus are covered by the common interest doctrine. But "[t]he common interest must be a legal one, not commercial or financial." *Blanchard*, 192 F.R.D. at 237. Van Senus has no legal interest in this case — she is not a party, she is not an employee of a party, she was not called upon to assist in the defense or indemnify any of the parties, and she did not engage with any of the parties to form a common legal enterprise. *See id.* In fact, the only reason Van Senus is involved in this case at all is because Centaur and Tsaparas have failed to comply with their citation obligations, making it necessary for NHC to pursue third-party subpoenas in an effort to find documents and resources that were concealed by the judgment debtors. It also is notable that, in responding to the citation, Van Senus (unlike many of the supposed third parties that have responded to citations) had (and still has) separate counsel. Thus, Van Senus is a truly independent third party, and Tsaparas waived privilege as to both himself and Centaur by giving her unfettered access to his emails with counsel.

Even if the Court is unwilling to order production of the emails between Tsaparas and his counsel at this time, the Court should at minimum require those documents to be produced for an *in camera* inspection. Perhaps the Court will conclude that the legal advice in those emails will be too sensitive to warrant production. But what the Court will certainly see is that for *years* after Tsaparas and his counsel claimed that Centaur ceased operations (*see, e.g.,* Dkt. No. 590-3) and lost access to their servers (*see, e.g.,* Dkt No. 621), *Tsaparas continued to communicate with his*

*counsel through a Centaur email address*. This alone is a critical fact in connection with multiple motions pending before this Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court should find that Centaur and Tsaparas have waived the attorney-client privilege on certain emails exchanged with Amundsen Davis between November 2021 and the present by sharing access to emails to with third-party contractor Van Senus. Accordingly, the emails during that time period that were shared with, copied to, and/or accessed by Van Senus should be produced to NHC. *Alternatively*, the Court should order those documents to be provided for *in camera* inspection. Finally, the Court should grant NHC such other further or additional relief in its favor as this Court deems fair, just, and equitable.

Dated: May 16, 2025                                              Respectfully submitted,

                                                      NHC LLC

                                                      By: /s/ *Bryan K. Clark*
                                                                    One of Its Attorneys

Daniel P. Jackson, Bar No. 6289813
Bryan K. Clark, Bar No. 6296090
Zachary J. Watters, Bar No. 6310675
Allison E. Czerniak, Bar No. 6319273
Keeley A. Sawyer, Bar No. 6336704
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
djackson@vedderprice.com
bclark@vedderprice.com
zwatters@vedderprice.com
aczerniak@vedderprice.com
ksawyer@vedderprice.com

Gini S. Marziani, Bar No. 3127421
Davis McGrath LLC
125 S. Wacker Drive
Chicago, Illinois 60606
T: +1 312 332 3033
gsmarziani@davismcgrath.com

*Counsel for NHC LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 16, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system and thereby served electronically by the CM/ECF system on all counsel of record.

*/s/ Bryan K. Clark*
An Attorney for NHC LLC
