**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NHC LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 6332** |
| | ) | |
| **CENTAUR CONSTRUCTION CO.,** | ) | |
| **SPIRO TSAPARAS, and PETER** | ) | |
| **ALEXOPOULOS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

NHC LLC obtained a judgment against Centaur Construction Co., Inc., Spiro Tsaparas, and Peter Alexopoulos. To attempt to collect the judgment, NHC has served numerous citations to discover assets under 735 ILCS 5/2-1402. The direct citation served upon Centaur Construction Co. required it to produce financial information within five years from November 28, 2023. Centaur produced no documents with dates beyond 2019 and, in response to this Court's order requiring a declaration of completeness, declared that it had no further responsive documents. NHC has moved the Court to order Centaur to show cause why it should not be held in contempt. NHC's motion is based on newly acquired information that indicates Centaur continued to operate—and thus has responsive financial documents—after 2019.

For the following reasons, the Court grants NHC's motion and finds Centaur Construction Co. in civil contempt of court for failing to abide by the citation. The Court

further grants the following relief:  (a) the transfer of servers that may contain documents relating to Centaur's business operations or, if Centaur no longer has control or access to these servers, the production of information regarding where the servers are located and who controls them, and a grant of authority to NHC to access the servers; (b) an accounting of all of Centaur's incoming and outgoing payments (including loans and repayments of debt) from January 1, 2020 to present; (c) payment of any amounts revealed in the newly produced documents and/or in the accounting to have been dissipated or improperly transferred; and (d) an award of NHC's reasonable attorneys' fees incurred in preparing and arguing this motion.

## Background

NHC LLC obtained a judgment of over $22 million against an entity, Centaur Construction Co., Inc., and its principals, Spiro Tsaparas and Peter Alexopoulos.  The judgment is on appeal.  The defendants, however, did not post a bond and did not obtain a stay pending appeal.  As a result, NHC has proceeded with collection-related activity before this Court.  This largely has involved the service of citations to discover assets as well as extensive discovery to attempt to find assets of the defendants.

On November 28, 2023, NHC served a citation to discover assets upon Centaur. Pursuant to the citation, Centaur was required to produce financial documents dating back five years from the date of the citation.

A months-long dispute over the citation ensued.  By April 16, 2024, the parties were at a standstill.  In a joint status report filed that day, NHC claimed that Centaur had produced "[n]o documents" and had not "respon[ded] to requests for such documents or communication."  Joint Status Report at 4, Dkt. No. 375.  Centaur disagreed, arguing

that NHC had received various financial records from Mr. Tsaparas "labeled as 'Centaur Business Records.'" *Id.* at 9. Centaur further contended that the lack of production of post-2019 documents was the result of the fact that it "largely ceased operations in 2019, and, as a result, Centaur's electronic servers are no longer supported, and its email accounts have been closed and restricted." *Id.*

To resolve the dispute, the Court ordered Centaur to provide a declaration of completeness by May 10, 2024. *See* Dkt. No. 389. On May 10, Centaur produced over 10,000 pages of documents. In its email accompanying the documents, however, Centaur said that these documents were not new: "all of the documents" produced had "already been produced to NHC . . . in the underlying litigation." Pl./J. Creditor's Reply, Ex. 1 at 1. On that same day, Centaur submitted a declaration of completeness attesting that "all of the documents within Centaur's possession and/or control that are responsive to the [c]itation" had been produced. Pl./J. Creditor's Mot., Ex. 1 ¶ 5. None of the documents Centaur produced involved actions beyond 2019.

By June 2024, NHC had obtained records from various third parties concerning Centaur's bank accounts that indicated Centaur continued to use the accounts beyond 2019. On June 12, 2024, NHC's and Centaur's counsel participated in a meet-and-confer concerning this information. In a follow-up email to that meet-and-confer, Centaur maintained that it had ceased operating in 2019 and that "outgoing wires from Centaur's bank account . . . are not evidence of Centaur resuming or continuing . . . activities, but are instances where Centaur attempted to pay off some of its prior debts." *Id.* Ex. 3 at 2. Centaur reiterated that there was "nothing else to produce responsive" to the citation. *Id.*

3

On January 3, 2025, NHC received 7,000 pages of documents from the Hershey-Bateman Family Trust, the owner of the home in Aspen, Colorado where Mr. Tsaparas resides. These documents included emails from 2020 to 2023 between Mr. Tsaparas and Mr. J. Bronwyn Bateman-Hershey, the trustee of the trust. In these emails, Mr. Tsaparas used his Centaur email address and discussed a range of construction projects occurring between 2020 and 2024. NHC also obtained local newspaper articles for construction projects reporting that Centaur was named as a development partner. Finally, NHC found that Aspen's public permit records reflected that Centaur had been named as a permit applicant for at least thirteen building permits between June 11, 2020 and April 15, 2022.

This information shed new light on Centaur's prior usage of its bank account and called into doubt Mr. Tsaparas's declaration of completeness regarding Centaur's production of records, in particular its failure to produce any post-2019 records. NHC has now moved the Court to order Centaur to show cause why it should not be held in contempt.

## Discussion

Rule 69 of the Federal Rules of Civil Procedure requires proceedings to execute a money judgment to "accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Accordingly, the Court proceeds under Illinois law.

"In Illinois, 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277 govern supplementary proceedings." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1111 (N.D. Ill. 2012). Illinois Supreme Court Rule 277(h) allows a court to punish a party "who fails to obey a citation" with contempt of court. Ill. S. Ct. R. 277(h).

4

"To succeed on a contempt petition," the moving party must "demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a court order." *FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009). This requires showing four elements: "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). As Rule 277 indicates, the failure to abide by the unambiguous commands of a citation to discover assets can be grounds for contempt of court. *See W. Bend Mut. Ins. Co. v. Belmont State Corp.*, No. 09 C 354, 2010 WL 5419061, at *13 (N.D. Ill. Dec. 23, 2010).

Centaur first contends that it has produced all documents in its possession and/or control as required by the citation. Although Centaur seems to have abandoned its previous contention that it ceased operations, it still claims to have no responsive documents past 2019, saying that it no longer has access to its document server. Centaur highlights Mr. Tsaparas's deposition, in which he stated that Centaur lost access to its server around 2020.

At the outset, later acquired information has cast doubt on the veracity of this deposition testimony. NHC has obtained a declaration from Deanna Van Senus, a former employee of Centaur, who stated that Centaur had access to its document server into 2024. Van Senus Decl. ¶ 12.

But even taking Mr. Tsaparas's deposition testimony at face value, Centaur should have had access to documents created *after* 2020, which is the supposed date

Centaur lost server access to earlier documents. The emails between Mr. Tsaparas and Mr. Bateman-Hershey, the construction projects described in those emails and the press, and the building permit applications all should have generated documents responsive to the citation. Centaur has offered no explanation for why it failed to produce any documents relating to these construction projects, many of which occurred after 2020.

Next, Centaur argues that NHC has failed to comply with Federal Rule of Civil Procedure 37, which requires a movant in a discovery dispute to make a "good faith" effort to resolve the dispute before moving to compel discovery. Fed. R. Civ. P. 37(a). The Court is unsure if this rule applies in the judgment enforcement context. As discussed above, Rule 69 of the Federal Rules of Civil Procedure requires proceedings to enforce a state court judgment comply with state procedures, not federal procedures. *Id.* 69(a)(1).

But even if Rule 37 does apply to judgment enforcement proceedings, NHC did make a good-faith effort to resolve this dispute before moving for contempt. NHC's counsel repeatedly engaged with Centaur's counsel regarding citation proceedings and the disclosure of responsive documents. Nor did NHC rush to file this motion at the first sign of trouble. When NHC initially became aware of Centaur's ongoing use of its bank accounts past 2019, it reached out to Centaur to coordinate a meet-and-confer and continued to follow-up through emails. Only when Centaur's explanations became untenable in light of new evidence did NHC move for contempt of court. Centaur had opportunities to have good-faith discussions about its operations with NHC before NHC filed the instant motion. It cannot rely on its own failure to do so to avoid sanction.

Finally, Centaur contends that a monetary fine is not an appropriate contempt remedy in this case. According to Centaur, the judgment against it is already so "insurmountable" that "[t]acking on additional sums of money to said judgment would accomplish absolutely nothing." Defs' Resp. at 5–6.

The Court disagrees. Financial penalties are a recognized method courts have traditionally used to coerce compliance. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *see also NLRB v. Neises Constr. Corp.*, 62 F.4th 1040, 1059 (7th Cir. 2023) (imposing larger prospective fines when "earlier prospective fines proved insufficiently onerous to prevent [contemptuous] behavior," as "[i]ncreasing the prospective penalties [a contemnor] faces . . . aid[s] in deterring" contemptuous conduct). And the fact that Centaur feels the need to argue against this specific fine indicates at least some deterrent effect, in that it shows the fine is clearly unwanted even considering the large underlying judgment. The Court thus finds that a financial penalty of $1,000 for each day Centaur continues to fail to produce responsive documents has, together with other terms, a significant potential to coerce compliance with this Court's orders.

Centaur makes no other arguments concerning NHC's other requested relief. The Court therefore finds Centaur in civil contempt of court and orders the following requested relief, in addition to the above financial penalty: (a) the transfer of servers that may contain documents relating to Centaur's business operations or, if Centaur no longer has control or access to these servers, the production of information regarding where the servers are located and who controls them, and a grant of authority to NHC to access the servers; (b) an accounting of all of Centaur's incoming and outgoing

payments (including loans and repayments of debt) from January 1, 2020 to present; (c) payment of any amounts revealed in the newly produced documents and/or in the accounting to have been dissipated or improperly transferred; and (d) an award of NHC's reasonable attorneys' fees incurred in preparing and arguing this motion. Although NHC also requests an extension of the citation against Centaur, that appears unnecessary at this time due to the Court's recent extension of this citation to August 31, 2025. *See* Mem. Opinion and Ord. at 11, Dkt. No. 674.

NHC further requests that Mr. Tsaparas be referred to the U.S. Attorney's Office for perjury. The Court will leave any referral of Mr. Tsaparas to NHC. The Court does wish to make clear, however, that perjury, without more, does not authorize a civil contempt finding. The Seventh Circuit disfavors punishing perjury through contempt proceedings. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737–40 (7th Cir. 1999) (citing *Ex parte Hudgings*, 249 U.S. 378 (1919), and *In re Michael*, 326 U.S. 224 (1945)) (requiring "some further element of obstructing the court's authority to be proven" for perjury to amount to contempt of court).

## Conclusion

For the reasons stated above, the Court grants NHC's motion for rule to show cause [dkt. no. 590]. The Court orders the following relief: (a) the transfer of servers that may contain documents relating to Centaur's business operations or, if Centaur no longer has control or access to these servers, the production of information regarding where the servers are located and who controls them, and a grant of authority to NHC to access these servers; (b) an accounting of all of Centaur's incoming and outgoing payments (including loans and repayments of debt) from January 1, 2020 to present;

(c) payment of any amounts revealed in the newly produced documents and/or in the accounting to have been dissipated or improperly transferred; and (d) an award of NHC's reasonable attorneys' fees incurred in preparing and arguing this motion. A financial penalty of $1,000 will be imposed each day Centaur fails to complete production of responsive documents in accordance with its citation, starting on June 16, 2025.

Date: May 30, 2025

MATTHEW F. KENNELLY
United States District Judge